# THE STATE v. RICHARD NEWCOMB, Appellant.

### Division Two, May 18, 1909.

1. **EVIDENCE: Hearsay: Co-conspirator.** The testimony of witnesses for the State, detailing the statements and conversations of the mother of defendant, charged with rape upon a little girl, made out of the presence of defendant, is competent on no theory. There being nothing in the case tending to show that she was a party to the child's undoing, or even knew of it until long after it was done, she was not a co-conspirator, and what she said or did after that is not competent against defendant.

2. ————: ————: ————: **Activity on Part of Mother.** Activity on the part of defendant's mother to see the wrong done the girl investigated and the guilty party punished, if used by the prosecution to indicate a purpose on her part to smother the prosecution, when, if rightly understood, it was intended for the opposite effect, is prejudicial to a defendant who was not present and in no manner chargeable therewith, and should not go to the jury.

3. ————: **Physical Examination of Defendant: What Physician Said.** The physician, who physically examined the defendant during the preliminary hearing in obedience to the order of a justice of the peace, cannot detail what he said to the defendant during said examination.

4. ————: **What Prosecutrix Said Long After Crime: Threats As Excuse For Changing Testimony.** The prosecutrix persistently stated that her own father and not defendant was the one who violated her person, and after the father was given a preliminary hearing and was bound over and she had so testified, and had returned from defendant's abode to the custody of an aunt, she for a week persisted repeatedly in the same story, but then, yielding to the importunities of an officious partisan of her father, who confided to the aunt that if prosecutrix persisted in accusing her father of the crime and "if something was not done she was going to break her father's neck," she changed her story and stated defendant, and not her father, was the guilty party, and this officious witness testified that she had stated to him that defendant's mother had made her accuse her father. *Held*, to be inadmissible, though elicited on cross-examination. It was competent to show the circumstances and inducements held out to the little girl to get her

to change her sworn testimony, but it was clearly incompetent to permit the officious witness to detail what prosecutrix said in regard to defendant's mother making her accuse her father by threats, etc. It was no part of the *res gestae;* it was rank hearsay, highly prejudicial, and the guise of cross-examination did not justify it.

5. ————: **Physical Examination: Compelled to Testify.** The defendant, charged with rape upon a little girl, while in custody and charged with the offense of which he was convicted and when he was without counsel, was ordered by the justice of the peace, upon the demand of the prosecuting attorney, to submit to a physical examination of his privates, in order that it might be determined whether or not he was afflicted with the loathsome disease which it was claimed the little girl had. He was taken into a room in the court house and in the presence of the sheriff was examined by the physician, both of whom testified as to what they saw and what they said to him. *Held,* the testimony was incompetent and inadmissible, as violative of defendant's constitutional right not to be compelled to testify against himself; and under the circumstances defendant did not voluntarily submit to this violation of his person.

6. ————: **Too Remote: Venereal Disease.** Testimony of a physician, in a rape case, to the effect that prosecutrix's father, whom she first accused of violating her person, had about four months prior to the offense been afflicted with a venereal disease but had recovered therefrom, was too remote, especially in view of the fact that two other witnesses testified that the father had admitted to them that he had been thus afflicted on the very day the crime is alleged to have been committed.

7. **INSTRUCTION: Defendant as Witness: "May Take."** It is preferable to tell the jury that they "may take" into consideration the fact that defendant is testifying in his own behalf, or his wife in her husband's behalf, rather than "will take," etc.

8. **REMARKS OF ATTORNEY: Defendant as Witness.** The prosecuting attorney has no right to state to the jury that defendant, when he took the witness stand, did not deny what another witness had testified.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*Faris & Oliver* for appellant.

(1)   (a)   It was an error for the trial court to permit practically all of the witnesses for the State to detail to the jury conversations and statements of Mrs. S. A. Newcomb, made by her out of the hearing and not in the presence of defendant.   Not alone were her statements and conversations thus made, permitted by the court to be shown, but her acts, her demeanor and her emotions, also.   The record overflows with things Mrs. Newcomb said and did and looked and acted. In law such things are said to be *res inter alios,* and not admissible.   In actual practice and experience and in plain language, they are prejudicial outrages perpetrated against the right of an accused to a fair and impartial trial.   State v. Knock, 142 Mo. 515; State v. Jaeger, 66 Mo. 180; State v. Patrick, 107 Mo. 152; State v. Meysenberg, 171 Mo. 59; State v. Huff, 161 Mo. 488.   The State throughout this trial strenuously, by insinuation and innuendo, but not openly, nor by any testimony whatever, endeavored to make of Mrs. Newcomb a co-conspirator after the fact.   State v. Rothschild, 68 Mo. 52; State v. Foley, 130 Mo. 488; State v. Patrick, 107 Mo. 152; State v. Hathorn, 166 Mo. 229; State v. Levy, 168 Mo. 521.   (b)   The physician's conversation was certainly incompetent, whatever may be said of his examination and deduction therefrom.   State v. Foley, 144 Mo. 600; State v. Kelleher, 201 Mo. 636; State v. Swisher, 186 Mo. 11; State v. Hale, 156 Mo. 108; State v. Young, 99 Mo. 666.   (c)   It was error to permit Jenkins to testify as to conversations had with the prosecutrix and to relate parts of such conversations, the same having occurred more than a month subsequent to the time of the alleged rape. 3 Greenleaf, Evidence, 213; State v. Jones, 61 Mo. 235; State v. Bateman, 198 Mo. 222.   (2)   The defendant, while he was in custody charged with this offense, when he was without counsel, was ordered

by the examining magistrate, at the request of the prosecuting attorney, to undergo a physical examination of his person. This examination was made by the sheriff of the county and by the witness, Dr. Crowe, both of whom afterwards appeared at the trial and testified as to the examination, as to what they saw and as to what they said to the defendant, while they had him off by himself examining him. This was error. State v. Haight, 117 Iowa 650; 10 Ency. Ev., 595. The case of State v. Haight, supra, will be found to be a case, in almost every respect, on all fours with the case at bar, except that in the case at bar nothing seems to have been said by defendant either pro or con.

*Herbert S. Hadley,* Attorney-General, for the State; *James T. Blair* of counsel.

(1) The statements of Dr. Crowe, in defendant's presence, were properly admitted. There is no showing in the record that defendant was in custody at the time. McCants was then under arrest. The authorities cited are not in point. (2) There was no exception saved to the testimony of Jenkins as to the conversation with Frances McCants, of which defendant now complains. Besides defendant had called for the ''changed story'' by inquiring about it in chief. (3) The testimony of Dr. Swearingen was not prejudicial, and the instruction excluding it was properly refused. (4) The rulings as to misconduct of the prosecuting attorney in his argument are not here for review. Mere recitation in an objection that certain language was used by the prosecuting attorney does not preserve it for action by this court.

GANTT, P. J.—This is an appeal from the circuit court of Pemiscot county. Defendant was charged, by an indictment found by the grand jury of said county, with having, on the ——— day of December, 1907, committed upon one Frances McCants, a female

child under the age of fourteen years, the crime of rape.

This indictment was filed on the 2nd day of March, 1907. Defendant was tried at the November term, 1907, and a mistrial resulted. He was again put upon trial at the February term, 1908. The latter trial resulted in a verdict of guilty, and the assessment against him of the penalty of imprisonment in the penitentiary for a term of thirty years. From this verdict and the resulting judgment and sentence thereon, the defendant, after his motions for a new trial and in arrest were overruled, took and now prosecutes this appeal. The facts are substantially as follows:

Defendant, with his mother and one William Rushton, were at all the times mentioned, engaged in a small mercantile business and in operating a restaurant upon the Main street in Caruthersville. All of these persons, with the prosecuting witness and one Lucy Logston, occupied as a sleeping apartment a room in the rear of this little store.

The prosecuting witness at the time of the perpetration of the alleged rape was under the age of consent, being of about the age of ten or eleven years. She was well grown for her age, and, as her testimony abundantly indicates, was, her condition in life and environment considered, of rather unusual intelligence. She had been left by her father with defendant and defendant's wife and mother, in order that she might attend school in town. Prosecutrix had been thus living with defendant and attending school for about one year at the time of the commission of the alleged rape.

On the night of December 1, 1906, the father of the prosecutrix, one Frank McCants, was in town, and about 9 o'clock in the evening came to the place of business of the defendant and slept there all night. McCants was at this time somewhat intoxicated, or, as one witness put it, "he had a dram."

On this occasion McCants slept with his daughter, the prosecuting witness. On the 10th day of December following, the prosecuting witness was observed by Mrs. S. A. Newcomb, mother of the defendant, and a witness upon the trial for the defendant, to be suffering from some physical difficulty which produced in the gait of prosecutrix, when walking, a perceptible limp as if she were crippled. At this time, and at the time of the occurrence of the conversation below recited, no one was present thereat, or in the room, so far as appears, or upon the premises, except the prosecutrix and defendant's mother.

Upon observing the physical impairment of prosecutrix's gait, Mrs. Newcomb asked her if there was not something the matter with her. She at first made strong denial, but upon being most urgently pressed by Mrs. Newcomb, finally admitted that she was sore, and that she had been getting sore, as she expressed it, ever since her father had slept with her. Mrs. Newcomb thereupon examined the prosecutrix and found the private parts of the latter in such condition, as to the mind of the witness, called for medical treatment. Mrs. Newcomb sent for a physician, Dr. Phipps, to whom she related prosecutrix's condition and requested him to make an examination of her. This Dr. Phipps did, calling to his assistance, after a partial or cursory examination, another physician, Dr. Crowe. Both of these physicians testified upon the trial, and stated in their testimony that they found an enlargement, and an inflammation of the private parts of the prosecutrix, and that such inflammation was caused, in their opinion, from gonorrhea. Dr. Crowe was permitted to say that such enlargement was produced, in his opinion, by the commission upon the prosecutrix of a rape. No examination by means of a miscroscope was made, either of the prosecuting witness or of the defendant, or said Frank McCants, although every physician who testified admitted that

such examination and the finding of the specific bacillus of gonorrhea is the only absolute test. These physicians admitted, also, that there are other diseases of the parts which produce similar symptoms and yield to similar remedies. These physicians administered, or prescribed, treatment of prosecutrix as for gonorrhea, and she recovered in a few days, but they would not definitely say she had gonorrhea, except as a matter of opinion.

Upon the confession of the prosecutrix to Mrs. Newcomb that her condition was caused by her father, Frank McCants, a warrant was procured for McCants, complaint therefor being made and sworn to by said Rushton, the partner of defendant, and a witness for the State, and the latter's mother.

Upon being arrested on this warrant on the 12th day of December, 1906, said McCants admitted to the sheriff who arrested him, and to the then prosecuting attorney that he (McCants) had had the gonorrhea about two weeks before his arrest but that he was at the time of his arrest, well thereof.

Said McCants was given a preliminary hearing about the 21st day of December, 1906, upon the charge of having committed the rape in question upon the prosecutrix, his daughter. Upon a full hearing, he was bound over to await the filing of an information against him, without bail being allowed him.

Upon this trial his daughter, the prosecuting witness, was sworn and testified. In her testimony, given under oath, she charged her father alone with having violated her, and as being wholly responsible for her condition, and most bitterly denied that the defendant had ever at any time mistreated, wronged or violated her person in any wise.

Prior to prosecutrix being sworn as a witness against her father, and before she testified in the preliminary trial of him as aforesaid, she was taken privately into the office of the then prosecuting attorney,

Mr. L. L. Collins (whose term was about expiring and who ten days afterwards became the attorney for her father), and there in the presence of the sheriff and prosecuting attorney only, was questioned for a considerable time. On this occasion both of these officers offered her protection; stated to her their official position, which she admits she knew, and asked her to tell the truth. She throughout persisted in accusing her father and in averring the entire innocence of the defendant.

Shortly after the father of prosecutrix was committed to jail, upon this charge, she was taken from the custody of the mother of defendant and put in the charge of the sister of said McCants. This taking away of the prosecutrix occurred some few days after Christmas, 1906, or about four weeks after the alleged offense was committed.

After being committed to the care of her aunt, the prosecutrix was taken to Steele, a town some fifteen miles from Caruthersville. Here she persisted in accusing her father and denying the guilt of the defendant for about a week, or until the first days of January, 1907, although she was daily repeatedly pressed with interrogations by one J. R. Jenkins, an extremely officious friend and partisan of said McCants—and one, as he himself ingenuously admits, extremely unfriendly to defendant. Said Jenkins, having, as he expresses it, endeavored for several days to get the prosecutrix *to tell the truth,* and being in his own opinion, unable to prevail upon her to do so, finally spoke to the uncle and aunt of prosecutrix's attitude, advising them of the persistence with which she clung to her story accusing her father, and confidently confided to them his opinion that ''if something was not done she was going to break her daddy's neck.'' While not in evidence, except by inference, this cogent appeal seems to have borne fruit. For, subsequent to this communication and upon the fourth visit of Jen-

kins to the prosecutrix, and the fourth extended effort
of Jenkins to induce a change in her story, and a week
after she had been put in her aunt's custody, and some
four weeks or more after the offense was committed,
the prosecutrix for the first time stated that defendant,
and not her father, had violated her.

Thereupon, at the February term following, the
said Frank McCants was released from custody, a
*nolle prosequi* being entered to the information which
had been preferred against him by the prosecuting
attorney, charging him with the crime. In March,
1907, the defendant was indicted for the offense and
this prosecution followed.

Upon the trial of defendant it was shown that he
had for a few nights in the latter days of November,
1906, slept with the prosecuting witness in the common
sleeping apartment; that no reprehensible conduct on
defendant's part while thus sleeping, was shown, not-
withstanding at least three other persons also occupied
this room and slept within a foot or two of defendant.

Upon the trial of defendant a sharp contradiction
of fact arose in regard to facts below noticed, the
prosecuting witness testifying that defendant, and not
her father, had violated her, and that her former
story accusing her father had been induced by threats
made by Mrs. S. A. Newcomb, the mother of defendant.
These facts the defendant and his mother denied. The
State insisted, and the defendant denied, that the de-
fendant had had, about the time of the alleged rape,
the disease of gonorrhea. The defense insisted and
the State denied that said McCants had had the gonor-
rhea about the time of the alleged rape.

These contradictions, being interpolated and
woven into the case above set out, either pro or con,
will constitute a fair statement of the facts of the
case.

The testimony in this case presents such an ex-
ceptional state of facts that it calls for the most se-

rious consideration. It seems to us that no dispassionate, impartial mind can fail to have serious doubts as to the correctness of the verdict and conclusion reached in the circuit court, and hence it behooves us to scan closely the methods by which the verdict was obtained.

I. The first assignment of error is that the court erred in permitting the different witnesses for the State to detail at length conversations and statements of Mrs. Newcomb, the mother of the defendant, made out of the presence of the defendant; nor did it stop at this, but her acts, demeanor and emotions were brought before the jury. While in our opinion there was nothing in her conduct incompatible with a sincere desire to see the wrong done to the little girl thoroughly investigated and the guilty party punished, and nothing to indicate on her part a desire or purpose to smother a prosecution, it is evident that a contrary construction was sought to be placed upon her conduct and the defendant made to suffer therefrom.

The law is so well settled that the defendant cannot be bound by statements and acts of third parties made out of his presence that it needs no citation to establish it, but our own reports abound in decisions condemning the admission of such testimony. [State v. Jaeger, 66 Mo. l. c. 180; State v. Rothschild, 68 Mo. 52; State v. Patrick, 107 Mo. l. c. 152.]

Mrs. Newcomb was in no sense a co-conspirator. There was nothing in the evidence tending even remotely to establish that this lady was a party to the undoing of this child and by all the rules of testimony what Mrs. Newcomb said or did after the consummation of the crime could not be competent against defendant. Neither was this a case of subornation of perjury or compounding a felony or bribery of a witness. Indeed, fairly construed, the acts of Mrs. Newcomb were just the contrary in every respect and such only as an innocent, sympathizing and law-abiding

woman would have done under similar circumstances, and yet they were used to prejudice the defendant who was not present and was in no manner chargeable therewith. All of this character of evidence should have been promptly excluded on the objection of defendant, and to accentuate the error in this regard many of these statements and acts were permitted to go to the jury when it appears that at the time they were made and done, the defendant was actually in custody and while he was a suspect and efforts were being made to induce the little girl to make this heinous charge against him.

II. Equally grievous and hurtful, if not more so, was the action of the court in permitting Dr. Crowe to detail to the jury what he (Crowe) said to defendant while he was examining him under the order of the justice pending the preliminary trial of Frank McCants for this identical offense. Whatever may be said of the legality of the examination, which will be considered further on, there can be no doubt of the error in permitting the doctor to detail what he said to the defendant during said examination. [State v. Foley, 144 Mo. 600.]

III. As to the competency of the witness Jenkins to detail what the prosecuting witness said to him a month or so after the crime had been committed, clearly it was inadmissible upon every consideration of justice and right as original evidence, but was it permissible on the theory that it was elicited on cross-examination? We think not. The defendant had the right to show by way of impeachment that not until a month had elapsed did the prosecutrix charge defendant with this crime, and after she had testified in the preliminary trial of McCants that the latter was the guilty party. It was competent to show the circumstances and inducements held out to the little girl to get her to change her sworn testimony and charge

defendant therewith, but we think it was clearly incompetent for this witness Jenkins to proceed and detail to the jury what prosecutrix said in regard to Mrs. Newcomb making her accuse her father and in repeating her declaration that it was the defendant and not her father who had outraged her. This was pure rank hearsay; it was in no sense a part of the *res gestae* and the guise of cross-examination did not justify it. It could scarcely have been more injurious. It cannot be justified on the ground that it was confirmatory of her testimony after the prosecutrix had been impeached.

IV. We are now brought to the most important question in this record. The defendant, while in custody and charged with this offense and when he was without counsel, was ordered by the justice of the peace, at the demand of the prosecuting attorney, to submit to a physical examination of his privates by a physician. He was taken into a room of the courthouse and in the presence of the sheriff was examined by Dr. Crowe, both of whom testified in this cause as to the result of that examination and as to what they saw during that examination and what they said to him.

Counsel for defendant insist this was flagrant error and was a conspicuous violation of the constitutional right of the defendant to be exempt from testifying against himself. [Constitution of Missouri, sec. 23, art. 2.]

Some effort was made to show that defendant voluntarily consented to this violation of his person, but we think it is apparent that he simply submitted because he thought he was compelled to do so. When it is considered that he was at the time in custody for this very crime; that the prosecuting attorney demanded an order from the justice for this examina-

tion; that the sheriff took him into a private room for the purpose of the examination, it is not strange that the defendant thought he was compelled to submit. It is idle to talk of his having voluntarily consented to this violation of his person. As we read the record, he had no option in the matter. It seems that the term of the prosecuting attorney who obtained this order expired a few days later and he became the counsel of McCants, who had been charged by the prosecutrix as the guilty party.

The salutary provision of section 2215, Revised Statutes 1899, would seem to have been overlooked. We think the circuit court should have excluded all this testimony of Dr. Crowe and the sheriff as to this examination. We had occasion to examine the law on this subject in State v. Young, 119 Mo. 495, and the authorities are collated there. The facts of this case bring it clearly within the reasoning of that case and upon the authority of that decision and those cited and approved therein, this testimony was incompetent and inadmissible and violative of defendant's constitutional right not to be compelled to testify against himself. [See, also, State v. Height, 117 Iowa 650.]

V. The testimony of Dr. Swearingen to the effect that Frank McCants had been, about four months prior to the commission of this offense, afflicted with a venereal disease but had recovered therefrom, was entirely too remote and should have been excluded, especially as the sheriff and the former prosecuting attorney both testified that McCants had admitted to them he was thus afflicted on the very day that this crime was alleged to have been committed.

VI. As to instruction No. 5, we see no reversible error in giving it, though it would be preferable to tell the jury they *may take* into consideration the fact that a defendant or his wife is testifying in his own or

in her husband's behalf, instead of using the formula "will take" such fact into consideration.

VII.   As the judgment must be reversed for the errors already noted, it need only be said that the prosecuting attorney had no right to state to the jury that the defendant when he took the witness-stand did not deny what McCants had said. We cannot too strongly condemn this tendency of prosecuting officers to violate the positive command of the statute not to refer to the failure of a defendant to testify. [State v. Snyder, 182 Mo. l. c. 523.]

For the errors noted the judgment must be and is reversed. The testimony impresses us that this is a cause in which the court cannot proceed too cautiously as against this defendant. The testimony of the prosecutrix in this case, in view of her previous testimony, is, to say the least, far from convincing us the defendant should be deprived of his liberty unless far more satisfactory evidence can be produced against him.

Judgment reversed and cause remanded for a new trial.

*Burgess* and *Fox, JJ.,* concur.