State v. Barela, et. al., 23 N. M., 395

[No. 1922. Oct. 8, 1917.]

## STATE v. BARELA, et al.

### SYLLABUS OF THE COURT.

Evidence of the correspondence of the tracks of defendants, made by them under compulsion of the sheriff, with those found at the scene of the alleged crime of arson and leading therefrom, and evidence of the fitting of the shoes of defendants, taken from them by the sheriff, into tracks found at the scene of the crime, is not inadmissible, as violative of the constitutional guaranty against compulsory self-incrimination. The privilege protects a person from any disclosure sought by legal process against him as a witness. The fact that evidence is the result of an unlawful search or seizure, or is obtained by force or intimidation by private persons or officers, when not under sanction of judicial process, ordinarily has no effect whatever upon its admissibility.

Appeal from District Court, Dona County; Medler, Judge.

Guillermo Barela and another were convicted of arson, and they appealed. Affirmed.

W. H. H. Llewellyn, of Las Cruces, for appellant.

Testimony tending to show the similarity between foot prints made by appellant's shoes and prints found near scene of crime was held erroneous in Stokes v. State, 5 Baxt. 30 Rm. R. 72; Cooper v. State, 86 Ala. 610, 11 Am. St. Rep. 393; State v. Jacobs, 5 Jones, 259; Blackwell v. State, 3 Crim. Law Magazine 393; People v. McCoy, 45 How. Pr. 216; Day, et al. v. State of Georgia, 63 Ga. 688.

H. S. Bowman, Assistant Attorney General, for the State.

Such testimony was properly admitted.

State v. Garrett, 71 N. C. 85, 17 Am. R. 1; State v. Graham, 74 N. C. 646; Best on Evid. Sec. 183.

## OPINION OF THE COURT.

PARKER, J.—The appellants were tried, convicted, and sentenced for the crime of arson, from which judgment they appeal.

The barn of one John Engler, near the town of Las Cruces, was burned. On the following morning Engler summoned the sheriff to come to the place of the fire for the purpose of attempting to identify the perpetrators of the crime. The sheriff, after examining footprints in the vicinity of the place of the fire, followed the tracks therefrom for a distance of about 600 yards, to a point at the side of and near the residence of the appellant Barela. The appellants were, at the time, at work in a field near Barela's house, and the sheriff went to them and brought them back with him to the place near the burned barn. In returning to the barn he conducted the appellants along the trail which he had followed out from the barn. Near the burned barn the sheriff compelled the defendants to remove their shoes, and he compared the shoes with the tracks there found, making measurements of the tracks. The sheriff testified on the stand that from a comparison of the tracks of the defendants returning from the field where he found them to the barn, along the trail which he had followed out from the barn, and from a comparison of their shoes with the tracks found at the barn, he was of the opinion that the tracks were made by the shoes of the defendants. It therefore appears that the testimony of the sheriff is based, both upon evidence which he compelled the defendants to make by walking along the trail which he had followed from the barn, and upon evidence which he procured by compelling them to take off their shoes, which he then used by placing them in the

tracks which he found at the barn. It appears that at the time of this transaction defendants were not under arrest, and that the sheriff was acting under no judicial process of any kind.

Counsel for appellants objected to this testimony, which objection was overruled, and error is here assigned upon its introduction, upon the theory that it violates the constitutional guaranty against self-incrimination. The Attorney General suggests that the objection made in the court below was not founded upon the constitutional guaranty, but we will assume that the record sufficiently shows an objection upon this ground. There is some confusion appearing in the reported cases as to the privilege against self-incrimination as guaranteed by the federal and state Constitutions, leading to a different result in different jurisdictions. Under the prevailing doctrine, departed from only by a small minority of the states, this testimony was clearly admissible. Mr. Wigmore traces the history of the principle which protects from self-incrimination, and shows that it is the result of the growth of public opinion which was finally crystallized into law. The old inquisitorial examination, employed in both the common-law and ecclesiastical courts, whereby the accused was put to answer as to facts concerning his guilt, and answer enforced by torture in earlier times, was repudiated by the people, and was, after a long controversy, extending over a period of more than 400 years, finally abrogated. 4 Wig. on Ev. § 2250. Mr. Wigmore also points out that the constitutional sanction of the privilege is not a new creation, but is a permanent enunciation of the old principlefi rendering it safe from legislative encroachment. 4 Wig. on Ev. § 2252. See, also, State v. Quarles, 13 Ark. 307, 311. The different phraseology in the various Constitutions of our states all means the same thing, and all refer to the common-law privilege as it existed before the adoption of the Constitutions. 4 Wig. on Ev. §§ 2252, 2253; Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110.

What, then, is the essential nature of the privilege as it

comes down to us from the common law? Mr. Wigmore says that, taking into consideration the history of the privilege, it is plain that:

"It is not merely compulsion that is the kernel of the privilege, in history and in the constitutional provisions, but testimonial compulsion."

He defines the privileges as follows:

"The privilege protects a person from any disclosure sought by legal process against him as a witness." 4 Wig. on Ev. §2263.

Thus he points out that the production of documents or chattels by a person in response to subpoena, or order for production, or other form of process, treating him as a witness, may be refused under the protection of the privilege, while the same documents or chattels, if obtained from him without process against him as a witness, may be admitted in evidence. He cites many cases supporting the distinction. 4 Wig. on Ev. § 2264. Applying the principle underlying the privilege to compulsory bodily exhibition, Mr. Wigmore clearly shows that what is obtained is not testimony about the accused's body, but his body itself, and consequently the privilege is not violated. Wig. on Ev. § 2265. He quotes from State v. Graham, 74 N. C. 648, 21 Am. Rep. 493, relied upon by the state in this case, as holding that compulsory comparison of the accused's foot with tracks was not a violation of the privilege. He also cites United States v. Cross, 20 D. C. 365, 382, to the point that measurements of the accused by the officers were admissible and not violative of the privilege.

A fine discussion of the principles involved is contained in the case of State v. Fuller, 34 Mont. 12, 85 Pac. 369, 8 L. R. A. (N. S.) 762, 9 Ann. Cas. 648. In that case the shoes of the defendant were taken against his consent, it is assumed by the court in its discussion, and comparisons were made of them with tracks found at the scene of the homicide. The court holds, after an elaborate collection of the cases, that the evidence as to the comparison of the shoes with the tracks was not an invasion of the constitutional guaranty against self-incrimination. Another fine

discussion is to be found in State v. Turner, 82 Kan. 787, 109 Pac. 654, 32 L. R. A. (N. S.) 772, 136 Am. St. Rep. 129, to which is appended a most exhaustive note. In that case the defendant, upon being pressed by the sheriff and several other persons with him to produce a certain pistol of a certain caliber and make, with which the homicide was alleged to have been committed, first denied all knowledge of the same, but, upon being further pressed, he finally led the party into a grove, dug up the pistol, and gave it to the sheriff. The defendant assigned error upon the admission of the evidence of the finding and delivery of the pistol to the sheriff as an invasion of his constitutional right in regard to self-incrimination. The court, after quoting from many cases and texts, held the evidence admissible and said:

"The provision of section 10 of the Bill of Rights, that in a criminal prosecution, 'no person shall be a witness against himself,' forbids his being compelled to testify, but does not extend so far as to prevent the prosecution from making use at the trial of information obtained from him under duress. The courts do not approve a resort to illegal means to obtain evidence. They are not indifferent to a violation of the letter or spirit of the law designed for the protection of one accused of crime. But a far-reaching miscarriage of justice would result if the public were to be denied the right to use convincing evidence of a defendant's guilt, because it had been brought to light through the excessive zeal of an individual, whether an officer or not, whose misconduct must be deemed his own act, and not that of the state."

In Territory v. Chung Nung, 21 Hawaii, 214, the defendant at the time of his arrest was directed by the officer and the chief of detectives to remove his trousers, which he did, without objection, and they then made an examination of his person. Upon the offer of the testimony as to the result of the examination, the defendant challenged its admissibility upon the ground of the constitutional privilege against self-incrimination. The court said:

"The testimony, we think, was clearly admissible. The purpose of the examination was to obtain proof of a physical fact, and not to compel the defendant 'to be a witness against himself.' He was not required to say anything or to make any statement."

In State v. Arthur, 129 Iowa, 235, 105 N. W. 422, the defendant was directed by the sheriff who had him under arrest to give up his shoes. He complied with the direction, and another pair of shoes was supplied to him. The sheriff and others made use of the shoes for the purpose of comparing them with a track found near the wagon in which the defendant was suppose to have traveled. Objection was interposed to the introduction of evidence of the result of the comparison as violative of the defendant's constitutional immunity. The evidence was held to be admissible, and previous Iowa cases, State v. Height, 117 Iowa, 650, 91 N. W. 395, 59 L. R. A. 437, 94 Am. St. Rep. 323, and State v. Sheridan, 121 Iowa, 164, 95 N. W. 730, were distinguished. The court in this case draws the distinction that a right within the privilege must be insisted upon; otherwise, it is waived. In Kres v. State, 75 Neb. 294, 106 N. W. 27, shoes were taken from the defendant and compared with tracks, and evidence was given as to the result of the comparison. The court held that the evidence was admissible, but failed to refer to the constitutional guaranty. In Magee v. State, 92 Miss, 865, 46 South. 529, the defendant was compelled to put his foot in a track found near the place where the crime is alleged to have been committed, for the purpose of identifying him. The court, after citing many cases and the text of Mr. Wigmore, says:

"There has been great confusion in some courts on this subject; but we do not see how it is possible, logically, to sustain an objection to compelling the defendant simply to put his foot in a track for the purpose of identification on the ground that he was privileged by the constitutional provisions referred to against being compelled to testify or to give evidence against himself. He is not, in such cases, giving evidence. He is not testifying as a witness. He is not delivering any testimonial utterance."

In State v. Thompson, 161 N. C. 238, 76 S. E. 249, the defendant was compelled to go near a window through which the deceased had been shot. He was there compelled by the constable to take a gun, put it to his shoulder, and point it into the house as if he were going to shoot. Testimony was introduced as to the result of these experiments,

and to the effect that the tracks and the shoes were alike, and that the gun barrel, as thus held by the defendant, pointed to the place where deceased was when he was shot. The court places the testimony of both upon the same basis, to wit, that it is testimony of physical facts and conditions, and does not depend upon any admission or statement of the prisoner. It was held, therefore, that the testimony was not objectionable. In State v. Ah Chuey, 14 Nev. 79, 33 Am. Rep. 530, a witness testified that he knew the defendant, and that he had tattoo marks (a female head and bust) on his right forearm. The court thereupon compelled the defendant, over his objection to exhibit his arm in such a manner as to show the marks to the jury. It was held that the action of the court was not in violation of the constitutional privilege against self-incrimination. This case takes very advanced grounds upon this subject. In Holt v. United States, 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1031, 20 Ann. Cas. 1138, a defendant was compelled to put on a blouse, and testimony was introduced to the effect that it fitted him. This testimony was objected to upon the ground of the constitutional privilege. The Supreme Court said:

But the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principal would forbid a jury to look at a prisoner and compare his features with a photograph in proof. Moreover, we need not consider how far a court would go in compelling a man to exhibit himself; for when he is exhibited, whether voluntarily or by order, and even if the order goes too far, the evidence, if material, is competent. Adams v. New York, 192 U. S. 585, 48 L, Ed. 575, 24 Sup. Ct. Rep. 372."

In the Adams Case, cited above, the court distinguishes Boyd's Case, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and points out that the constitutional guaranties against unlawful searches and seizures and against self-incrimination were designed to protect against compulsory testimony from a defendant against himself in a criminal trial, and to punish wrongful invasions of the home of the citizen, or the unwarranted seizure of his papers and

property, and to render invalid legislative or judicial procedure having such effect. It is further pointed out that evidence, although illegally obtained, but without legislative or judicial sanction, is nevertheless admissible in evidence against the defendant. In State v. Miller, 71 N. J. Law, 527, 60 Atl. 202, the defendant was removed to a room in the upper part of the jail and divested of his clothes, and he thereupon was examined by a physician, with the result that two superficial wounds, one on the back of each hand, were discovered. The physician described the wounds before the jury. The court points out that the New Jersey Constitution contains no guaranty against self-incrimination, but that nevertheless it was a rule of evidence at common law, and is consequently applicable in that state. The court further held that, had the compulsion of the defendant to remove his clothing been illegal, and it had thereby been discovered that he was wounded upon a portion of the body usually covered, the evidence would still be admissible, and not violative of the principle under discussion. The court cites State v. Ah Chuey, 14 Nev. 79, 33 Am. Rep. 530. heretofore discussed.

The general rule, as gathered from the foregoing authorities, may be stated to be that the admissibility of evidence is in no way determined or affected by the manner in which or the means by which, it is obtained. If it is otherwise competent and relevant to the issues in the case, it is admissible, and does not violate either the constitutional guaranty against unlawful searches and seizures, or against involuntary self-indiscrimination. The provision against unreasonable searches and seizures, and against compulsory self-incrimination, are limitations upon this general rule, and have much narrower scope and effect than is sometimes given them. The provision against unreasonable searches and seizures refers to searches and seizures by the government through legislative or judicial sanction, and not to the private acts of individuals. The provisions against self-incrimination are limited to testimonial compulsion under process of some kind directed against the defendant as a witness. It does not and cannot logically apply to actions of the defendant under compulsion of per-

sons or officers without judicial sanction. In such cases the physical facts speak, not the defendant as a witness.

Counsel for appellants rely upon cases following a minority doctrine which we think is unsound, and some of them are clearly distinguishable upon the facts in the respective cases. In State v. Newcomb, 220 Mo. 54, 119 S. W. 405, the defendant was arrested, charged with the crime of rape, and while in jail was examined by an order of the justice of the peace to ascertain whether he was afflicted with a venereal disease; his victim having become infected with said disease. This evidence was held to be an invasion of the constitutional privilege of the defendant. The decision in this case was no doubt correct, because the evidence was procured as a direct result of the process of the court before whom the defendant was to be examined. In State v. Matsinger, 180 S. W. 856, the defendant was charged with rape, and was examined by physicians under the direction of the prosecuting attorney, and found to be infected with a venereal disease. Evidence of this fact was held to be inadmissible. The court in this case fails to observe that the examination was submitted to voluntarily by the defendant, and therefore the privilege had been waived. In State v. Horton, 247 Mo. 657, 153 S. W. 1051, the accused was in jail awaiting trial upon the charge of rape, and was examined by physicians under the direction of the police captain, and the court held that, while the defendant had failed to object to the physical examination, this did not amount to a consent, and that therefore the examination was involuntary, and rendered the evidence inadmissible.

In Hammock v. State, 1 Ga. App. 126, 58 S. E. 66, a deputy sheriff, upon information and without a warrant, arrested the defendant, searched him, and found a pistol on him. This evidence was given over the defendant's objection, and the court held that the same was inadmissible, as violation of this constitutional privilege. The opinion proceeds upon the theory that the evidence was a result of an unlawful search, accompanied by criminal violation on the part of the officer, and was consequently inadmissible. The real distinctions in connection with the

princple involved are entirely overlooked by the court. In Day v. State, 63 Ga. 667, evidence of forcibly putting the foot of defendant in a track was held an invasion of the defendant's constitutional privilege. This case cites no authority, but seems to be founded upon the proposition that force was used without a lawful warrant or authority for so doing. It seems to us that the argument is clearly unsound. If a warrant or order had been issued by some court, and the sheriff had executed the same in the same way he did in that case, the evidence would be clearly inadmissible under the doctrine of many cases. It would then have been done under compulsion of the court itself. This case is the leading case in Georgia, and all subsequent cases follow it. In State v. Jacobs, 50 N. C. 259, it was held error to compel the defendant to exhibit himself to the jury, and enable them to determine for themselves as to whether he was a free negro or not. This was compelling the defendant to give testimony before the jury and may be justified upon that ground. In People v. McCoy, 45 How. Prac. (N. Y.) 216, the defendant was arrested, charged with the murder of her illegitimate child, and was confind in the county jail. The coroner directed two physicians to go to the jail and examine the private parts and breasts of the prisoner, and determine whether she had been recently delivered of a child. This was done, and the physicians testified to the result. The court held that this was a clear invasion of the constitutional rights of the defendant. This case is in line with the general doctrine that, where the evidence is secured by means of process of the court, in whatver form, it is inadmissible.

The cases from Missouri and Georgia follow a minority, and what we deem to be an unsound, doctrine. They allow the fact that the evidence was illegally obtained to control its admissibility. As before seen, this has nothing to do with the matter. The test is as to whether the evidence is compulsorily given by the defendant under process as a witness. The question as to whether it is the result of an unlawful search or seizure, or whether it is obtained by force or intimidation of private persons or officers, not un-

der sanction of judicial process, ordinarily has no effect whatever upon its admissibility. And in this case the defendants did nothing with their shoes in the way of making tracks which could not as well have been done by others after the shoes had been taken from their feet. They simply made a sign upon the earth, which was measured and testified about by the sheriff; and under all the authorities, apparently, the action of the sheriff in taking their shoes off their feet and comparing the same with the tracks was not a violation of their constitutional rights. The comparison of tracks made while they wore the shoes is likewise unobjectionable.

For the reasons stated, the judgment of the court below will be affirmed; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.