## BOOKER v CINCINNATI (city)

Ohio Common Pleas, Hamilton Co

Decided April 3, 1936

Hyman Rosen, Cincinnati, for plaintiff in error.

John D. Ellis, Cincinnati, and H. J. Wernke, Cincinnati, for defendant in error.

### OPINION

By GORMAN, J.

The plaintiff in error was convicted in the Municipal Court of the city of Cincinnati, for the violation of an ordinance making it an offense to drive an automobile while intoxicated. From this judgment error is prosecuted to this court. The evidence discloses that Melburn Meadows had parked his automobile in the vicinity of Gilbert and Churchill Avenues, in Cincinnati, on the evening of November 30, 1935, and that while he was opening the door of the machine to get out, a car driven by Booker struck the door. Meadows stated he jumped on the running board of Booker's car, pulled out the ignition key forced the defendant to the curb and called the police.

Officer Swillinger arrived, placed Booker under arrest and took him to the General Hospital, where he was examined by Doctor Morris Hyman, an assistant receiving physician. The court, over the objection of counsel for the plaintiff in error permitted Doctor Hyman to testify that Booker showed acute alcoholism and was intoxicated. Upon cross-examination the doctor stated that he had the plaintiff in error walk along a line, made a urinalysis and examined his breath and the pupils of his eyes.

It is claimed that this examination was made against the will of Booker, and it was therefore error to receive it in evidence. The principal contention is that the plaintiff in error was compelled to incriminate himself and testify against himself, contrary to his constitutional rights.

Rights under the Constitution of the United States prevent unreasonable searches and seizures, (Fourth Amendment) and provide that no person shall be compelled to be a witness against himself (Fifth Amendment). Neither of these amendments is a limitation upon the power of the states, but operate solely upon the Federal government.

However, both of these rights are written into our state Constitution (**Ohio Constitution §§10 and 14**).

It will be noticed that the right against unreasonable search and seizure, and the privilege against self-incrimination are based upon separate and distinct articles; nevertheless by loose language courts sometimes construe these rights as if their bases were identical. (See 35 Harvard Law Review, 682-704).

The question before us involves solely whether the plaintiff in error's privilege against self-incrimination was violated. There is no statute or ordinance which specifically gives the right of a doctor to examine one suspected of intoxication.

In criminal trials when an issue of insanity is raised under §13441-3, GC, the court may commit a defendant to an insane hospital for observation. In a case in 1931 a defendant was so committed over his objections and at the trial attempted to prevent the alienists from testifying.

One of my colleagues ruled that the evidence based on the observation of the doctors was admissible, but not the results of Wasserman tests or spinal punctures. In making such a ruling Judge Schwab cited the statement of the court in State v Eastwood, 73 Vt., 205, 206:

"The objection made to this testimony was that it was in violation of the constitutional rights of the respondent as guaranteed by Article 10 of the Declaration of Rights in the Constitution which provides that no person upon trial for a criminal offense shall be compelled to give testimony against himself. The commitment of the respondent to the asylum was not in derogation of that right.

"It was necessary to restrain him somewhere and it was as lawful to confine him in the asylum at Waterbury as in the jail at Middlebury, and very likely it was more comfortable for him. He could be observed by any one at either place and such persons could testify without conflicting with respondent's constitutional rights; otherwise one under indictment could insist upon strict seclusion and being unseen.

"He was not obliged to do anything or say anything at the asylum, and if he did, any observer, including the superintendent, might testify and give his opinion as to his sanity based upon what he saw the respondent do and heard him say, while he was in confinement in the asylum. The testimony was admissible. There was no error in the admission of the testimony."

It would seem therefore, that a warden or custodian of the jail could testify as to the actions of the defendant, and express an opinion as to whether he was sober or intoxicated. Likewise, a physician at the hospital can express an opinion if it is based upon observations of the defendant. The defendant cannot claim his rights are violated because he is restrained in the hospital rather than the jail. In case of one suffering from delirium tremens or physical injuries the prisoner is usually confined in the hospital pending recovery, Therefore, the court is of the opinion that no right of the defendant was violated by taking him to the hospital. Neither would testimony of the physician, based solely upon his observation of the defendant be inadmissible.

If the defendant voluntarily submits to an examination by a physician or does so without objection, the result of the facts disclosed is admissible. **Angeloff v State, 91 Oh St 361.**

In this case the defendant claims the examination was made over his objection. A defendant may be made to stand up for the purpose of identification in this state.

(Coles v State, 3 C.C. (N.S.), 420; Lindsey v State, 4 C.C. (N.S.) 409. Fingerprints may generally be taken, and footprints compared. (See 63 A.L.R., 1326; 35 A.L.R., 1227). On the other hand, a person cannot be required under an ordinance to stop and make a full report of an accident. (Rembrandt v City of Cleveland, 28 Oh Ap 4). None of these involve the submission of his body to physical tests such as urinalysis, spinal punctures, Wasserman tests, or walking a chalked line.

In Ex parte Company, 106 Oh St, 50, regulations providing for the examination of prostitutes for venereal disease was held to be constitutional although the quarantine regulations alone were involved. The question of constitutional privilege was not raised. It is interesting to note that in other states where it has been raised that the right to forcibly take blood for a Wasserman test has been denied. See State v Newcomb, 220 Mo., 54; State v Au Chuey, 14 Nev., 79; State v Nordstrom, 7 Wash., 506; Wragg v Griffin, Sheriff, (Ia.) 170 NW, 400; State v Haight, 117 Ia., 650, 2 A.L.R., 1332.

It has been said that even when charged with the gravest of crimes a defendant cannot be compelled to give evidence against himself, nor can the state compel him to submit to a medical or surgical examination, the result of which may tend to convict him of a public offense.

The court very clearly, in Jones v State of Ohio, 20 C.C. (N.S.), 542, 544, said that a court had no right to appoint a physician to forcibly examine the person of the prisoner. The prisoner, however, in that case, submitted voluntarily, and statements he made to the physicians were admissible.

Of course, if urinalysis is made voluntarily or if the defendant walks the line without objection, he cannot complain. But if he is compelled to submit to tests by force, threats or duress, he is being compelled to become a witness against himself.

Therefore, while the evidence is not clear, assuming that the defendant was compelled to submit to tests against his will, and Doctor Hyman based his opinion in part at least upon those tests, the testimony of Doctor Hyman was inadmissible.

We are therefore of the opinion that the evidence of Doctor Hyman was improperly admitted. It is impossible to state whether or not the opinion of the doctor was based upon his observation or upon the tests made in violation of the constitutional rights of Booker.

It is not necessary, however, that intoxication be proven by expert witnesses. Any lay witness can testify as to whether or not a person was intoxicated without having any special qualifications.

The plaintiff in error admitted that he had drank both beer and whiskey with a friend. Meadows testified that plaintiff in error was staggering and that he could smell liquor on his breath and that he was drunk. Officer Swillinger testified that Booker had liquor on his breath.

If Doctor Hyman had not been called as a witness the court could upon the admission of the plaintiff in error and the opinion of Meadows, have found Booker guilty of driving an automobile while intoxicated.

While the admission of the testimony of Doctor Hyman was erroneous, in order to secure a reversal the plaintiff in error must show he was prejudiced thereby. Prejudice will not be presumed in a criminal case. Fabian v State, 97 Oh St, 184.

Sec 13449-5, GC, specifically provides in criminal trials that—"no motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court * * * for the admission or rejection of any evidence offered unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby."

This section has been construed to mean not only that prejudice must affirmatively appear from the record, but also that the plaintiff in error was prevented from having a fair trial. See State v Moon, 124 Oh St, 465.

Excluding the testimony of Doctor Hyman the evidence clearly sustains the conviction that the plaintiff in error was driving an automobile while intoxicated. There was sufficient competent evidence before the court to establish his guilt, and it would seem to be a vain procedure to grant a new trial under such circumstances.

The judgment of the Municipal Court is therefore affirmed.