**STATE of Missouri, Respondent,**

v.

**James TALBERT, Appellant.**

No. 54136.

Supreme Court of Missouri,
Division No. 2.

May 11, 1970.

**2**

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

Ira M. Young, St. Louis, for appellant.

STOCKARD, Commissioner.

Defendant, charged under the Second Offender Act with murder, first degree, was found guilty by a jury of murder second degree, and was sentenced by the court to imprisonment for a term of twelve years.

From the evidence offered by the State a jury reasonably could find the occurrence of the following events.

On the evening of August 12, 1967, Boyd Snipes and Lelia Snipes, his wife, went to a drugstore on the corner of Cass and Jefferson Streets in the City of St. Louis. While there Mrs. Snipes purchased some beer, gin and wine, and Mr. Snipes had an argument, the subject matter of which is not known, with Wallace Connors, Jr. Mr. and Mrs. Snipes then left the drugstore and walked west on Cass Street. As they approached Leffingwell Street, Wallace Connors, Jr., and Arthur Hamilton "jumped out" and stated, "It's a holdup give me your money." Mr. Snipes told them he had no money. Hamilton had a knife, described by Mrs. Snipes as a "hook-bill knife like a scythe." Mr. Snipes "pulled out" his knife and told his wife to go on down the street. Defendant then came out of a house and said, "Is that the one, man?" Connors answered, "Yes, man, he is the one." Hamilton then ran to the house and picked up a rifle at the side of the building, and tossed it to defendant, who pointed it at Mr. Snipes and said, "I will kill you if you don't give us your money." Mrs. Snipes started to walk away, and then heard a shot. She looked over her shoulder and saw defendant pointing the rifle at her husband who was running eastward on Cass Street with Hamilton and Connors in pursuit. She then ran to a service station and called the police. Mr. Snipes was shot five times, one of the bullets passing through the heart, and he was dead when the police arrived.

Defendant testified and his version of what occurred was substantially different

from that shown by the evidence of the State. According to defendant, he was at home when Hamilton came in and told him that there was "a man out here killing a lady by your house." Defendant went out and saw a woman down with a man standing over her with a grass scythe in his hand. The man told her to get up or he "would cut her head off." Defendant said: "Mister, don't do that here. Take it down the street." The man then said, "Give me the gun, baby," and when the woman made no effort to do so he "ran his hand in his pocket," and Hamilton "quick hit him." The man then left and Hamilton looked for him, apparently in the nearby areas. What then occurred is not clear, but the man, obviously Boyd Snipes, hit Hamilton with the scythe and Hamilton shot him. According to defendant the woman, apparently Lelia Snipes, was very intoxicated as evidenced by the way she was "trying to help herself walk." When the police arrived the scythe was lying right by Boyd Snipes's right hand, but the police did not pick it up. Apparently neither the gun nor the scythe was recovered by the police.

Defendant first contends that the trial court erred in admitting in evidence the testimony concerning the argument between Boyd Snipes and Wallace Connors, Jr., at the drugstore because it occurred out of the presence of the defendant, there was no conspiracy shown, and "it permitted the jury to consider prejudicial and inflammatory evidence unrelated to any act of defendant." He cites State v. Newcomb, 220 Mo. 54, 119 S.W. 405; State v. Kennedy, 177 Mo. 98, 75 S.W. 979; State v. Patrick, 107 Mo. 147, 17 S.W. 666; and State v. Woodward, 191 Mo. 617, 90 S.W. 90. In substance, these cases hold that a statement or act of a third party made out of the presence of the defendant is not admissible in the absence of the showing of a conspiracy. However, the State does not contend that the evidence established a conspiracy between defendant and Connors. The State contends that the fact of

the argument between Wallace Connors and Boyd Snipes, immediately before the occurrence which resulted in what the State's evidence shows was an attempted robbery, constituted a material fact, part of the res gestae, tending to explain what later occurred, particularly in view of the question by defendant to Connors and his reply.

The general rule is set forth in 22A C.J.S. Criminal Law § 673 as follows: "The statements and exclamations or acts and conduct of third persons are admissible in evidence when they are so closely connected with the crime as to constitute a part of the res gestae." This rule is applicable to acts and conduct of third persons "which precede the offense immediately or by a short interval of time and which tend to elucidate a main fact in issue * * *." 22A C.J.S. Criminal Law § 675. In this case, the fact that Boyd Snipes had an argument with Wallace Connors immediately before the attempted robbery, together with the question by defendant and Connors's answer, tended to establish the motive or reason defendant became involved in the affair. However, assuming for the purpose of argument, that the testimony was not admissible for the above stated reason, it then would have been irrelevant and immaterial. In that event we do not see how the defendant could possibly have been prejudiced, and a judgment is not to be reversed because of the admission of irrelevant and immaterial evidence which clearly is not prejudicial. State v. Smith, Mo., 431 S.W.2d 74, 79; State v. Spica, Mo., 389 S.W.2d 35, certiorari denied 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312.

Defendant next contends that the court erred in sustaining the State's objection to "defendant's question on cross-examination of witness Lelia Snipes as to what statement she had made to the police officers who first arrived on the scene immediately following the homicide, thereby restricting defendant from inquiry into possible contradictory statements made by said wit-

**4**

ness." Defendant cites State v. Arrington, Mo., 375 S.W.2d 186, but from our reading of that case we do not find it particularly helpful.

■ Certain background information is necessary. Lelia Snipes testified on direct examination that immediately after the shooting she had called the police and had met and directed them to the scene. She did not testify concerning any statement made by her to the police. On cross-examination she was asked what she told the police, and an objection was sustained. During the discussion at the bench, counsel for defendant indicated that he wanted to know "whether she told the police what was later contradicted," and he also indicated that he wanted to prove "contradictory statements." The court then indicated that counsel should ask whether she made specific statements to the police officers, and it is clear that the court had reference to the asking of a warning question for the purpose of impeachment by use of inconsistent statements. Therefore it is clear that the court did not foreclose the area of examination, but only that it directed the manner in which the examination should proceed. There then followed eight pages of cross-examination in which Lelia Snipes testified to what she saw and did, what the police did, and what she told the police, including the statement by her to the police that defendant was "the man that was doing the shooting." She was also asked whether she made a statement to the police that "one of these fellows had stabbed [her] husband," and she answered, "No." All of this occurred without objection. Defendant's point, by its wording, clearly shows that defendant was seeking to impeach the witness by showing prior inconsistent statements. The ruling of the court did no more than indicate the procedure to be followed, and the record shows that the suggested procedure was followed. We find no prejudice to defendant by this ruling.

■ Defendant's next point is that the verdict "was against the weight of the evi-

dence." This was an issue for the trial court in ruling on the motion for new trial, but the weight of the evidence is not a matter reviewable by an appellate court. State v. Williams, Mo., 376 S.W.2d 133; State v. Hodge, Mo., 399 S.W.2d 65. Defendant's argument is to the effect that Lelia Snipes was intoxicated at the time of the occurrence about which she testified, and that this so completely destroyed her testimony that no submissible case was made. Lelia Snipes denied she was intoxicated, and the only evidence that she was intoxicated came from the testimony of defendant. Defendant also argues that the evidence refutes the State's theory that the homicide occurred during a robbery attempt because "common sense dictates that one bent upon robbery would not commit said offense directly in front of the place where he lived in the presence of his neighbors."

It was for the jury to resolve the conflict in the evidence concerning intoxication, and to determine the credibility of the witnesses. State v. Minor, Mo., 282 S.W. 2d 545, 547. This court determines only whether there was substantial evidence, if believed by the jury, to sustain a verdict of guilty, State v. Missey, 361 Mo. 393, 234 S.W.2d 777, and the review of the evidence, as previously set out, clearly demonstrates that there was.

The remaining contention is that the trial court erred in "polling the jury as to how they stood numerically and compelling the jury to continue its deliberations without a break for dinner when several of the jurors indicated that they were hungry and wanted to eat before resuming their deliberations, thereby unfairly coercing the jury to reach a compromise verdict."

■ Defendant admits that an inquiry by the trial judge to the jury after it has been in deliberation for a reasonable period of time as to how the members stand numerically, without indicating what party or result they favor, for the purpose of ascertaining whether there is a reasonable prob-

ability of an agreement is not coercive per se, but that the issue of coerciveness must be determined from the record of what was said and done at the time. State v. Baker, Mo., 293 S.W.2d 900; State v. Smith, Mo., 431 S.W.2d 74, 86. Defendant argues that the facts of this case show coercion.

The jury retired to deliberate at 5:43 o'clock p. m. At 6:55 o'clock the jury was brought from the jury room, and the trial court, with proper instructions not to reveal the number favoring any particular position, inquired how the members stood numerically, and the answer was "seven to five." The court then asked: "Do you believe that if you had additional time to deliberate you could reach a verdict in this case?" By raising their hands all twelve members indicated an affirmative answer. The court then asked: "Now, let me ask you this question. It is 7:00 o'clock. Now, would you like to eat and then begin deliberations again after eating, or would you rather return to your jury deliberating room and continue your deliberations now? How many would like to return to their jury deliberating room and continue deliberations?" Nine members of the jury held up their hands. The court then asked how many would like to eat and then deliberate, and three held up their hands. The court commented, "We will let the majority govern, so we will ask you to go back to your deliberating room, and continue deliberating, and if you arrive at a verdict, notify us, and if you reach the stage that you believe you cannot reach a verdict, you notify us on that too. And we will add a reasonable time to contact you again." Subsequently, the jury returned a verdict of guilty, and the jury was polled. The time the verdict was brought in is not shown.

We find nothing here to indicate coercion. The fact that three members of the jury preferred to eat before deliberating further does not indicate coercion. There is nothing in the record to show that deliberations were held beyond a rea-sonable time, or that the jury was told or was caused to believe they could not eat until a verdict was reached. In fact, the jury was told that if no verdict was reached they would be contacted again in a "reasonable time."

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.