STATE of Missouri, Plaintiff-Respondent,

v.

James William McCLURE, Jr., Defendant-Appellant.

No. 34855.

Missouri Court of Appeals, St. Louis District, Division One.

Jan. 8, 1974.

Richard E. Snider, Cape Girardeau, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Chief Counsel, Jefferson City, A. J. Seier, Pros. Atty., Cape Girardeau, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant, James William McClure, Jr., was prosecuted by information for the crime of selling LSD, a controlled substance, on June 25, 1971, under §§ 195.240, 195.270, RSMo 1969, V.A.M.S., the sale taking place prior to the effective date of their amendment, Laws of Missouri 1971, p. 237. After a verdict of guilty, the court sentenced the defendant to two years in the custody of the State Department of Corrections.

On appeal, defendant first attacks the sufficiency of the evidence to sustain the verdict of guilty. We review the evidence most favorable to the state. State v. Strong, 484 S.W.2d 657, 661 [9] (Mo. 1972).

Trooper Ashurst of the Missouri State Highway Patrol, in plain clothes and with an informant-companion, drove to a house located in Cape Girardeau, Missouri, to purchase some drugs. Two unidentified females, each about eighteen years of age, admitted the officer and the informant to the house. When they were in the living room, the informant inquired if Scotty was there. Scotty, whose full name is Frederick Scott Leuckel, came into the room and invited the two into a bedroom. Once there, Leuckel asked the patrolman and the informant if they would "like to buy some good Mescaline". The patrolman then inquired as to the price, and Leuckel replied that he had "a hundred hits", the vernacular expression for tablets or doses, for $135.00. When asked about the price of fifty, Leuckel stated it would be $75.00. The patrolman then offered $70.00, and Lueckel replied that he would have to ask "Dip". The three returned to the living room, and Leuckel stood in the doorway between the living room and the kitchen and called to "Dip", a nickname for the defendant McClure. McClure responded to the call and Leuckel repeated the patrolman's offer of $70.00 for fifty tablets to McClure who was then standing in the doorway between the kitchen and the liv-

ing room. According to the patrolman's testimony, McClure shook his head "no" and whispered something to Leuckel which the patrolman could not overhear. Leuckel then approached the patrolman and said, "We'll have to have $75.00, that's our price." This purchase was consummated by Leuckel handing two plastic bags, each containing twenty-five tablets, to the patrolman who then paid Leuckel. Leuckel, in the presence of McClure, then asked the patrolman if he would like to buy some marijuana. Going back to the bedroom, Leuckel displayed to the patrolman a plastic bag filled with plant material which Leuckel stated was a quarter pound of marijuana. The patrolman inquired as to the price, and after Leuckel consulted with McClure, McClure stated: "$50.00". The patrolman told them that the price was too high but that he might return later in the evening, and then left with the informant. A chemical analysis of the tablets purchased indicated that they contained lysergic acid diethylamide, commonly known as "LSD".

■ Bearing upon his contention that the evidence was not sufficient to sustain the conviction, the defendant maintains that this evidence does not point so clearly to guilt as to exclude every reasonable hypothesis of innocence. While it is a rule of law in this state that the facts and circumstances relied upon by the state to establish guilt must not be inconsistent with the defendant's innocence unless it points so clearly to his guilt as to exclude every reasonable hypothesis of his innocence (State v. Irby, 423 S.W.2d 800, 802 [2] (Mo.1968)), this rule is applicable only where the evidence of the defendant's agency in connection with the crime charged is entirely circumstantial. State v. Allen, 420 S.W.2d 330, 333 [1] (Mo.1967); State v. Stead, 473 S.W.2d 714, 716 [3, 4] (Mo.1971).

■ In this case, the defendant was charged with aiding and abetting the unlawful sale of a narcotic drug. It was therefore not necessary for the state to show that the defendant directly participated in all of the essential elements of an illegal sale. State v. Gideon, 453 S.W.2d 938, 939 [3] (Mo.1970). Accordingly, direct evidence showing any form of affirmative participation in aid of the unlawful sale is sufficient to support a conviction (State v. Schlagel, 490 S.W.2d 81, 84 [2] (Mo.1973)); and direct evidence, of course, eliminates the applicability of the "inconsistent with innocence" rule.

■ Section 195.010(30), RSMo 1969, V.A.M.S., defines "sale" to include "barter". Participation in setting the price to be charged for the LSD is necessarily participation in "barter". Direct evidence is evidence which, if believed, proves the existence of the fact in issue without inference or presumption (State v. Famber, 358 Mo. 288, 214 S.W.2d 40, 43 [3] (1948)). Here there is direct evidence of the defendant's participation in setting the price to be charged for the LSD. The trooper heard Leuckel repeating Ashurst's "$70.00 for fifty" offer to the defendant. Immediately after Leuckel repeated this offer to defendant, the trooper saw the defendant shake his head "no". No inference or presumption is necessary to determine that a negative head shake given in response to an offer means that the offer was rejected by the defendant. Additionally, the direct evidence of the defendant's participation in the rejection of the offer is strengthened by the fact that after Leuckel's conference with the defendant, Leuckel stuck to his original $75.00 price. Furthermore, in so doing, Leuckel said, "We'll have to have $75.00, that's our price." The most reasonable and logical inference to be drawn from Leuckel's use of the first person plural pronouns, "we" and "our", is that the defendant and Leuckel were joint participants in the proposed sale of LSD to the patrolman.

■■ The further negotiations with regard to the purchase of some marijuana also indicated direct participation by the

defendant in a joint venture to sell drugs. When the marijuana was displayed and the price was asked, Leuckel consulted with the defendant McClure. At this point, it was the defendant McClure who responded: "$50.00", rather than Leuckel. Although this transaction was never completed, its occurrence immediately after the purchase of the LSD was proof that Leuckel and the defendant were joint participants in the common scheme or plan to sell narcotic substances in violation of the law. Evidence of other crimes is competent to prove the specific crime charged when it tends to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. State v. Adamson, 346 S.W.2d 85, 88 [4] (Mo.1961). The test to be applied in such a situation is the logical relevance of the other criminal act to the particular crime charged. If the facts and circumstances surrounding the other criminal act reasonably tend to prove material facts and settle the issues, then they are not to be rejected merely because they incidentally proved the defendant guilty of another crime. State v. Hemphill, 460 S.W. 2d 648, 651 [4] (Mo.1970). Thus, the testimony which showed that the defendant participated in the attempted sale of marijuana is competent and admissible here to prove his guilt of the specific crime charged; that is, aiding and assisting in the sale of LSD. State v. Page, 395 S.W. 2d 146, 150 [9] (Mo.1965); State v. Stamper, 159 Mo.App. 382, 141 S.W. 432, 433 [5] (1911).

■ For his second point relied on, defendant McClure contends that it was error for the trial court to admit the testimony of the state patrolman to the effect that during the approximately fifteen minutes he was in the house where the purchase of LSD was made, the two girls who had admitted him to the house sat at the kitchen table with what appeared to be marijuana in front of them, and rolled and smoked cigarettes. We do not reach the conten-

tion that this evidence had no probative value and was prejudicial because no objection was made by counsel for the defense to the question as to what the two girls had been doing in the house, nor was any objection made to the answer of the witness. At no later time during the trial did defense counsel request any relief, nor did he ask that the testimony be stricken and the jury instructed to disregard it. A claim of prejudicial error concerning the admission of testimony to which no objection was made at the earliest opportunity after grounds for the objection become apparent cannot be considered on appeal because it is not properly preserved for review. State v. Barker, 490 S.W.2d 263, 275 [18] (Mo.App.1973).

■ We now pass to the third contention of error advanced by defendant which is directed to the action of the trial court in allowing the prosecuting attorney to cross-examine defendant's witness, Scott Leuckel, concerning the harboring or protecting of defendant McClure from the authorities because of McClure's status in the United States Army. This cross-examination commenced by asking a question as to whether Leuckel was protecting McClure from some authorities. Upon objection, the prosecutor explained to the court that he was trying to show interest and bias of the witness. The court overruled objections to this line of questioning, and the prosecutor, upon a negative answer from the witness, then proceeded to ask him whether he knew that McClure was absent without leave from the Army. The defendant contends that this cross-examination was prejudicial to him because there was no evidence to indicate that he was convicted of being absent without leave from the military, and further because absence without leave, although constituting a violation of military law, does not constitute a violation of Missouri law. Thus, he claims that Leuckel's testimony concerning his AWOL status was in violation of the rule of evidence that declares although a witness may be impeached by showing he

has been convicted of a criminal offense, it may not be shown that he has been arrested or charged with an offense. In support of this, he cites State v. Lee, 404 S.W.2d 740, 748 [14] (Mo.1966), wherein it was determined that a court martial for dereliction of duty was not proper impeachment of defendant on cross-examination because there is no comparable offense which is a "crime" under the laws of this state, and the offense, at least in peace time, does not involve moral turpitude. But this and other cases cited by the defendant are not pertinent to the issue raised by the testimony elicited from Leuckel on cross-examination. These cases are analogous to decisions concerning the impeachment of a witness by showing his past act or acts of misconduct. The purpose of the inquiry on cross-examination, as indicated by the prosecuting attorney, was not to discredit the character of the witness testifying. Instead, it was designed to show the witness's bias and interest in favor of the defendant. The danger of the jury's misuse of evidence for an incompetent purpose in situations of this kind is great. And if its value for a legitimate purpose is slight, or the point for which it is competent can readily be proved by other evidence, the evidence should be excluded because the probative value of the evidence is substantially outweighed by the risk that its admission will create a substantial danger of undue prejudice or of confusing the issues or of misleading the jury. The problems in this area are readily demonstrated by the case of State v. Taylor, 498 S.W.2d 614 (Mo.App.1973), where this court determined that cross-examination with regard to the arrest record of the witness to show bias and interest was improper and prejudicial. But, as pointed out in the dissent by Clemens, J., generally, much latitude is given to interrogation of a witness to prove bias and prejudice of a witness. As stated in State v. Pigques, 310 S.W.2d 942, 947 (Mo.1958): "It is said the bias or prejudice and interest of a witness is never irrelevant, and always may be shown as affecting the witness' credibility." Even

where the witness admits the extent of his bias and prejudice, it may nevertheless be shown by interrogation. As to how far the inquiry may be pursued, the trial court has considerable discretion, and it is not within the trial court's discretion to prevent cross-examination entirely in this area. Thornton v. Vonallmon, 456 S.W.2d 795, 798 [4] (Mo.App.1970). But the fact that this evidence may have a prejudicial effect on the jury, however, does not foreclose its admission. Evidence which is competent for one purpose cannot be excluded merely because it is incompetent and prejudicial for aonther purpose. State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 56 [12] (1936). To prevent prejudicing the rights of a party, he may seek and obtain an instruction limiting the extent to which, and the purpose for which, the jury may consider such evidence. State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58, 61 [3] (1939). (The defendant did not seek such an instruction here.)

■ If a witness has knowledge that a party may be a fugitive or may be subject to a charge before a judicial or quasi-judicial tribunal and a witness is protecting or concealing this party from detection, interrogation or apprehension by authorities, either military or civil, then interrogation of that witness as to his activity is proper to disclose his bias favoring that party. We can find no prejudicial error in the exercise of the court's discretion in this case allowing cross-examination by the prosecutor to show whether such facts exist as they bear on the bias and interest of the witness.

■ The defendant, however, has raised in his brief an even greater matter of concern in connection with the use of this testimony elicited from Scott Leuckel in the state's argument to the jury. In his summation to the jury, the prosecuting attorney stated during the course of his opening argument: "In this case he [defendant] was trying to escape from his re-

sponsibility to his Country. Consider seriously at least a five year penitentiary sentence for this boy." Again in his closing argument in rebuttal, he said: "And, not only did the traffic go on in secret in this case, but Dip McClure had another reason to stay out of the sight of the law. He was runnin' from the law, running from the responsibility. And he wants you to assist him in running from this responsibility. I don't think you're gonna take it. It's a tough duty. It's a responsibility. That officer did his duty when he went in there. The Court's done their duty by bringing this Defendant before you." Obviously, these remarks of the prosecuting attorney were not directed to the issue of Leuckel's interest and bias as a witness, and, therefore, his credibility. Rather, they were directed to the defendant's military status. No citation of authority is necessary to conclude that such evidence concerns a collateral matter, and, therefore, is incompetent to show either the defendant's guilt or the punishment he should receive. His military status had no logical relation to the crime of aiding and abetting an unlawful sale of drugs. Its purpose was to depict the defendant as an irresponsible person, one who evaded his responsibility to his country and its laws. The resulting prejudicial effect on the defendant's rights by these references cannot be weighed at this time, but there was a substantial risk that such evidence, in light of the prosecutor's comments, was received by the jury as substantive evidence of the defendant's guilt of the crime for which he was being tried. This is contrary to our fundamental concept of the criminal law which accords an accused, whether guilty or innocent, the right to a fair trial. In this connection it is the duty of the trial court and of the prosecuting attorney to see that the defendant gets a fair trial. And argument or other conduct which inflames the prejudices or excites the passion of the jury against a defendant, prevents him from having a fair trial. Improper oral argument on the part of the prosecuting official constitutes prejudical error re-quiring reversal. State v. Spencer, 307 S. W.2d 440, 446 [11] (Mo.1957).

Although defense counsel failed to object to these portions of the argument at the time they were made, he had filed a motion before trial asking the court not to permit any reference during the opening statement or in offering any evidence with reference to the defendant's military status. When the motion was called up before the court prior to trial, the judge cautioned both counsel: "Let's have it agreed you will not mention military status unless there is some reason you want to bring it out on cross-examination." Defendant's counsel continued during the trial to make objections to the introduction of any testimony with regard to his client's military status. At the conclusion of Leuckel's testimony, a motion for a mistrial was made and overruled, so that the prosecutor was fully aware of defendant's objection to any reference in this area because of the prejudicial effect that it would have upon the defendant's case. When objection to argument is not timely made, or not made at all, then normally any issue as to whether it is prejudicial is not preserved for review. State v. Clark, 412 S.W.2d 493, 497 [5] (Mo.1967). But under Rule 27.20(c), V.A.M.R., a court may, of its own initiative, review errors affecting an accused's substantial rights. Here, the remarks of the prosecuting attorney affected the defendant's right to a fair trial. They were calculated to arouse in the jury personal hostility toward the defendant, and injected a false issue calling for his conviction not only because of the charge filed against him and proven by the evidence, but also because of the extraneous inflammatory matter submitted to them in the argument. A fair and impartial trial to which defendant was entitled by constitutional guarantee was not accorded to him in this proceeding. Because of the inflammatory statements, defendant is entitled to a new trial. State v. Heinrich, 492 S.W.2d 109, 114 [9] (Mo.App.1973).

In view of the fact that there may be another trial of this case, we consider the

fourth contention of error. In this point on appeal, defendant contends the court erred when it allowed Patrolman Ashurst to testify to conversations he had with witness Leuckel during negotiations for the sale of LSD and during negotiations as to the marijuana. Defendant McClure argues that the use of Trooper Ashurst's testimony regarding these conversations was reversible error because they were not declarations in furtherance of the object of an unlawful combination or conspiracy. Defendant points out that without Ashurst's testimony on the words spoken by Leuckel, there would have been no way that the state could have given its interpretation of appellant's negative headshake, and without it there would have been no way to have proved an unlawful combination. Defendant further urges that since an unlawful combination had not been proven prior thereto, the use of the conversations could not be used to establish an unlawful combination. In other words, what the defendant is apparently trying to say is that before the declarations of a co-conspirator can be admitted into evidence against the accused, both the conspiracy itself and the accused's connection with the conspiracy must be established. State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 27 [11] (1929).

Defendant, however, was not charged with conspiracy, he was prosecuted for the crime of aiding, abetting and assisting Leuckel in the sale of a controlled substance. Defendant's participation occurred during the negotiations leading up to the sale. These negotiations occurred between the plainclothes patrolman, Ashurst, and the co-actor, Leuckel. When the negotiations had arrived at a point where a counter-offer was made on a reduced price, Leuckel consulted with the defendant. The defendant's active participation in the sale occurred when he advised Leuckel by a negative shake of the head that the tablets should not be sold at the price offered. McClure's connection with the illegal sale was not shown by the statements of Leuckel as to what McClure had

said or done as related by Ashurst. The verbal statements and declarations of Leuckel and Ashurst were all verbal acts which constituted a part of the crime itself. McClure's negative shake of the head was also an act which formed a part of the surrounding circumstances that led to the actual consummation of the illegal sale. By this action, McClure made the preceding negotiations relevant to this case. It has become a well settled principle of the law of evidence that statements or declarations made contemporaneously with or immediately preparatory to a particular litigated act which tend to explain, illustrate or show the object or motive for the act, are properly admissible into evidence as a part of the res gestae. Nanney v. I. H. Shell & Son, 138 S.W.2d 717, 719 [3] (Mo.App.1940). As pointed out in Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, 781 [1] (1938): "There are at least two very different kinds of statements which are received in evidence under the designation of Res Gestae. One kind can properly be classified as verbal acts, which actually are a part of the transaction under investigation. Naturally they must be contemporaneous with it to be part of it. (But not every statement contemporaneous with a transaction is part of it.) The Hearsay rule is not applicable to this class of statements; they are admissible because they are 'a part of some otherwise relevant act.'" (Citations omitted). The other kind of statements which are received into evidence as an exception to the hearsay rule are those made by participants, victims or spectators to a crime or event immediately before, during, or immediately after the commission of the crime or happening of the event, where the circumstances are such that the statements made were of a spontaneous nature inspired by the excitement of the occasion, and there is no opportunity for the declarant to deliberate and fabricate. State v. Pflugradt, 463 S.W.2d 566, 572 [7–9] (Mo.App.1971). It is the first kind of statements or declarations which are admitted as res gestae and which are the kind here in evidence that

are illustrated in the case of State v. Talbert, 454 S.W.2d 1, 3 [2] (Mo.1970), wherein it is pointed out that where such statements or act of a third party were relevant, where they were made immediately before an occurrence, and where they explained what occurred immediately thereafter, they were admissible as res gestae even though the statements were made outside of the presence of the defendant. In the case before us, although the negotiations with Leuckel started outside the presence of McClure, McClure was consulted later when the counteroffer as to price was made. All of these statements, declarations and acts of the party relevant to the illegal sale became a part of the res gestae and hence were admissible into evidence.

Because of prejudicial argument made by the prosecuting attorney, we reverse and remand for a new trial.

SIMEONE, Acting P. J., and KELLY, J., concur.