**STATE of Missouri, Respondent,**

v.

**Roger BUCKNER, Appellant.**

**Nos. WD 41458, WD 42998.**

Missouri Court of Appeals,
Western District.

May 21, 1991.

John A. Klosterman, Asst. Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and KENNEDY and FENNER, JJ.

SHANGLER, Presiding Judge.

The defendant Roger Buckner was charged with murder in the first degree [§ 565.020, RSMo 1986], waived the right to a jury, and was tried by the court. The defendant was found guilty of the offense and sentenced to life imprisonment without eligibility for probation or parole. The defendant filed a notice of appeal of the conviction and then, conformably with the procedures of Rule 29.15, brought a motion to set aside the conviction and sentence, and appealed the order that denied relief. The appeals were consolidated for review.

The sufficiency of the evidence for conviction is not in dispute. That evidence, considered in the light most favorable to the verdict, shows that on January 6, 1987, at about 6 a.m., Kansas City, Missouri, police officers Pfeifer, Salazar and Van Zante went to 4201 Prospect in response to the call of the dispatcher. Don Wright, Carol Kinney, and her two young sons, Deonte and Raymond, lived there together.

When Officer Pfeifer entered through the front door, she found a victim, apparently dead, lying inside the living room. His hands were bound and he had been stabbed. That person was Don Wright. She found another person, Ernest Black, in the dining room, injured and in a daze, and a third person, in the bedroom, with hands bound and injuries to her throat. Neither Black nor Kinney were coherent. The police officers found the two boys in the bedroom, unharmed. There was a strong odor of gas from the kitchen, where the burners had been turned on and the pilot light extinguished.

On January 5, 1987, the day before the crime, the victim Don Wright, Carol Kinney and her two sons, Ernest Black, Earl Black and his girlfriend Pam Conrad, went to the home of Benjamin Kinney, the brother of Carol Kinney. Benjamin Kinney's home was about four blocks from 4201 Prospect, where his sister lived. Carol Kinney and the group of five or six persons there smoked crack cocaine. After smoking several baggies of cocaine, Carol and her two sons returned home in Ernest's car, accompanied by Earl and his girlfriend, Pam, and Don Wright. There she and those with her smoked more cocaine, after the children were put to bed.

Don Wright and Ernest Black returned to Benjamin Kinney's home thirty minutes later to get some money owed Carol, and returned to 4201 Prospect after another thirty minutes, but without the money. While they were still at Benjamin Kinney's home, someone knocked on the door and identified himself as "Roger." It was the defendant Buckner, whom Benjamin had

known since junior high school days. Buckner wanted some crack cocaine for his girlfriend. Benjamin Kinney sold drugs out of his house, but he was closed for the night, he told Buckner. He told Buckner that he might want to talk with Don Wright, who was there. Wright told Buckner that he could get him what he wanted, and they agreed to meet at Wright's home in about an hour. Buckner then left.

Don and Ernest returned to 4201 Prospect, but they left again to take Earl and his girlfriend home. They stopped again at Benjamin Kinney's to get the money for Carol. Wright returned after about fifteen or twenty minutes. He told Carol Kinney that "he was waiting on his friend to come over." At about 4 a.m., there was a knock on the door at 4201 Prospect. It was the defendant Buckner and Leamon White. White asked Wright if he knew where to get coke, and Wright said he did, but that they would have to go get it. They discussed the terms of the sale, and then Wright asked White if he was ready to go. White asked Buckner what he thought, and Buckner replied he did not know because all he had was $50. Carol had been seated on the couch between Buckner and White.

Suddenly the back door flew open. Carol jumped up and ran towards the back door and into a man who said, "I'm with them." Buckner and White pulled out guns and ordered everyone to "freeze." They ordered Wright, Carol and Ernest Black to lie down. Buckner tied up Carol and Black, and White tied up Wright. White put his gun to Wright's head and asked where the drugs were. Wright said, "There's no dope here." White asked him where the money was and the dope was, and Wright told him there was no money or dope there. White ordered Wright to get down on the floor, and hit him on the head with the butt of the gun. White and Buckner kicked Wright in the chest and knocked out some of his teeth. Buckner then searched the house for drugs and money. White questioned Carol as to their location, and Buckner questioned Ernest Black.

Buckner then got an extension cord and gave it to White, who bound it around Wright's neck and twisted it. Wright gasped for air, White hit Wright on the head with his gun and Buckner smashed his head against the floor. As White tightened and pulled the cord around Wright's neck, Buckner pushed down on Wright's head and back. Buckner also grabbed the cord and pulled on it. After this went on for awhile, Buckner remarked, "Man he still ain't dead." White then let go of the cord and Wright's head hit the floor. Buckner went into the kitchen and came out with a knife. The third assailant grabbed Wright's hair and pulled his head back. White cut Wright's throat with a knife.

Buckner stabbed Carol in the middle of the neck with a knife, and then cut her on the right side of the neck. Her blood flowed as Carol pretended to be dead. After the assailants left, she lost consciousness. Ernest Black was also stabbed in the neck and also lost consciousness.

The police were called by Deonte, Carol Kinney's eight year-old son. They found Don Wright in the living room, without vital signs. His body was cool, and there were ligature marks and eight stab and cutting wounds on his neck. The primary cause of his death was asphyxiation through ligature. The stab wounds contributed to his death.

The police found blood on the rear screen door at 4201 Prospect and in a 1980 Oldsmobile that was found about five blocks from the residence. This blood, like that of Don Wright, was ABO type O and had PGM enzyme type $2 + 2 -$, a very rare type. Less than six people per thousand have this combination of ABO and PGM types.

In February of 1987, Leamon White brought Buckner to the home of Terry Anderson, White's niece, and arranged for Buckner to stay at her apartment. Then, on April 11, 1987, police officers knocked on the door of her apartment, announced themselves, and were let in. Buckner had run into the bedroom. They asked her if anyone else was in the apartment, and she replied just herself and her children. The

officers, however, found Buckner in a closet.

At the conclusion of the evidence, and after argument of counsel, the trial court found Buckner guilty of murder in the first degree. The court sentenced Buckner to life imprisonment without eligibility for probation or parole.

A motion to set aside the conviction and sentence under Rule 29.15 was brought and heard. The court denied the motion in a memorandum decision accompanied with findings of fact and conclusions of law.

### The Direct Appeal

The defendant Buckner raises a single point on the direct appeal from the judgment of guilty found and entered by the trial judge. He contends that the trial court erred in receiving, over objection, the testimony of Benjamin Kinney that related certain statements made by the victim Don Wright to the defendant Buckner. Buckner objects that the statements were hearsay and denied him the right to confront the witness against him.

The reported colloquy took place on early January 6, 1987, when Don Wright and Ernest Black were in Benjamin Kinney's kitchen with him. Buckner came to the back door, was let in and asked Benjamin about purchasing crack cocaine for Buckner's girlfriend. He was told that the crack house was closed for the night and that he would not sell drugs, but that he might want to talk "to this man here," Don Wright. More conversation ensued, was objected to by the defendant, but allowed by the trial court. [The underlined portions were the subject of the objections]:

Q. Okay, Mr. Kinney, again, was there a conversation between Don Wright and Roger Buckner?

A. Yes.

Q. I want to go through that conversation. What did Roger say?

A. He said he wanted to get it for his girl, so Don asked him what did he want to get, and he said he wanted to get a half.

Q. What's a half?

A. Two rocks.

. . . .

Q. After Roger said he wanted a half, which you say means two rocks, what did Don say?

A. <u>He asked him if he wanted to get it right now</u> and Roger said, no, because I am going to go pick up my girl in Grandview.

Q. Was there any agreement then as to when the transaction would occur?

A. Yes. He said—

Q. Who said?

A. Roger said yes, I'm going to have to go pick her up in Grandview and Don Wright said <u>about how long is this going to take you.</u>

Q. What did Roger say?

A. Roger say [sic] it's going to take me about 45 minutes.

Q. Was there any conversation regarding where the narcotics transaction would take place?

A. Yes. At Don's house.

Q. Now, how did that conversation come about, as far as Don's house?

A. Well, <u>he told Roger 45 minutes</u> and then he said, <u>so you still remember where I stay at.</u>

Q. Who said that, Don?

A. Don said that. Then I said—

Q. You said?

A. I said to Roger, I said yeah, remember when Don was selling some weed and I took you up to Don's house to buy some weed.

Q. What did Roger say?

A. Roger said yeah, he remembers.

Q. Was there ever a discussion of the street?

A. Yes, on Prospect.

■ This evidence, as noted, was received over the objection of defendant Buckner that the testimony by Benjamin Kinney of statements by the deceased victim Don Wright arranging a crack cocaine transaction with Buckner to be concluded later at Wright's home was inadmissible hearsay, and so denied him the right of confrontation under *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934

(1965). The prosecution explained to the court that the testimony was presented not for the truth of the matter asserted, but as part of the *res gestae*, "to explain what Roger [Buckner] said." The defendant insisted that the statements by Wright were not admissible within any hearsay exception, so that their effect was to assert the truth of the matters they related. The court allowed the evidence, on the basis tendered, "[o]nly to understand what the defendant said, in what context." That ruling was proper, and the evidence was competent and probative on the issues before the factfinder.

■ In a criminal proceeding, testimony that is not offered to prove the truth of the matter stated in the conversation is not subject to objection as hearsay. *State v. Finley,* 588 S.W.2d 229, 231[1] (Mo.App. 1979). A declaration that indicates a present intention to do a particular act in the immediate future, relevant to a fact in issue, is admissible to prove that the act was in fact performed. A statement of that kind explains or gives color to the conduct of the declarant and so is not received as an assertion of the truth of the matter spoken, but as a verbal act. An utterance of that kind is not testimonial, and so the hearsay rule does not apply. *Menorah Medical Center v. Davis,* 463 S.W.2d 618, 621[2–4] (Mo.App.1971); *State v. McClure,* 504 S.W.2d 664, 671[13, 14] (Mo.App.1974). The verbal act, although still treated by our decisions as a species of *res gestae,*[1] rests on a separate grounding of trustworthiness. *See, e.g. State v. Jones,* 256 S.W. 787, 791[5] (Mo.1923); *State v. Talbert,* 454 S.W.2d 1, 3[2–4] (Mo. 1970). It is not, as in circumstances of *res gestae,* as a spontaneous response to the excitement of the occasion that clothes the verbal act with trustworthiness, but as a reaction related in time and logic to the act of which it is a part. *Sconce v. Jones,* 343 Mo. 362, 121 S.W.2d 777, 781[1–3] (1938); *Lewis v. Lowe & Campbell Athletic Goods Co.,* 247 S.W.2d 800, 804[1–3] (Mo.1952);

*State v. White,* 621 S.W.2d 287, 294[17, 18] (Mo.1981). *See also,* R. Hasl & J. O'Brien, Missouri Law of Evidence, § 11–16 et seq. (1984); McCormick On Evidence § 294 (3d ed. 1984).

■ A verbal act within this rule of admissibility describes not only a declaration of present intention to do a particular act in the immediate future, but any statement of the declarant's existing state of mind that is so closely connected with an act in litigation as to give character to that act. It is admissible, in effect, as a fact relevant to a fact in issue. *Lewis v. Lowe & Campbell Athletic Goods Co.,* 247 S.W.2d at 804[1–3]; *State v. McClure,* 504 S.W.2d at 671[13, 14]; *State v. Sherman,* 637 S.W.2d 704, 706[2, 3] (Mo. banc 1982); *State v. Talbert,* 454 S.W.2d at 3[2–4]; *State v. Gardner,* 558 S.W.2d 395, 399[4, 5] (Mo.App.1977); *State v. Singh,* 586 S.W.2d 410, 418[11] (Mo.App.1979); *See also* Federal Rules of Evidence 803(3).

It was not the victim Don Wright's state of mind that was an ultimate issue in the criminal prosecution, but that of the defendant Roger Buckner. The state of mind of the deceased victim was relevant only to explain the motive that prompted him to be at home within 45 minutes of the earlier conversation with Buckner. The statements by Wright were circumstances to prove that state of mind, and his conduct then prompted by that state of mind was relevant to an ultimate issue in litigation. The statements attributed to Wright, whether Buckner wanted the "two rocks" right away and Buckner's deferral of the transaction for 45 minutes until after he had picked up his girlfriend, were not only relevant to explain why Wright returned home within 45 minutes, but also to the material issue of defendant Buckner's state of mind and purpose 45 minutes later when he and White arrived at Wright's home. They bore to prove that the purpose of the 45 minute lapse that Buckner imposed was not for a more convenient drug transaction,

---

**1.** The term *res gestae* is now discountenanced as a tool of analysis of the admissibility of evidence. The term *excited utterance* as defined in Federal Rule of Evidence 803(2) more precisely explains the premise for admission of such evidence. *State v. Williams,* 673 S.W.2d 32, 34[1, 2] (Mo. banc 1984).

but to put into motion the design to raid, rob and kill Wright. The statements were admissible to show Wright's state of mind when he spoke them and bore relevantly on an ultimate element in issue, that Buckner "knowingly cause[d] the death of another person after deliberation on the matter." § 565.020, RSMo 1986.

There is no objection that the statements by Don Wright received by the trial court were not expressions of his then present state of mind, or that they were not closely connected with his return home within 45 minutes, or that they otherwise lacked reliability because made in self-interest. *See, e.g., State v. Benson,* 346 Mo. 497, 142 S.W.2d 52, 54[3, 4] (Mo.1940); *see also Sconce v. Jones,* 121 S.W.2d at 781[3]; *Lewis v. Lowe & Campbell,* 247 S.W.2d at 804[1–3]; *State v. Singh,* 586 S.W.2d at 418[11]; McCormick On Evidence § 294 (3d ed. 1984).

The contention of error is denied.

The judgment of conviction is affirmed.

### The Post-conviction Appeal

■ The amended Rule 29.15 motion alleged for relief nine claims of ineffective assistance of counsel. The court conducted a hearing, received evidence on the motion and entered an order denying relief with findings of fact and conclusions of law.

On this appeal, Buckner presents two points. Buckner contends that the findings and conclusions entered to support the denial of relief on grounds of ineffective assistance of counsel were clearly erroneous because the record clearly shows that (1) trial counsel failed to advise Buckner that only he could waive a jury trial so that the trial by the court amounted to a coerced waiver of jury trial and (2) trial counsel failed to advise Buckner that only he could waive his right to testify in his own behalf and Buckner did not knowingly and voluntarily waive that right.

The findings of fact on each ground of the motion that determined each contention

against the movant were articulate, complete and supported by substantial evidence. Finding of fact 7 adjudicates contention (1) on appeal, and finding of fact 6 adjudicates contention (2).

FINDING OF FACT No. 7: Movant's testimony at his hearing regarding his waiver of his right to a jury trial, was again, that he did not knowingly do so and that Berrigan told him what to say, and that although an extensive record was made entailing his rights, this was a mere formality and not a real waiver of his rights. Ms. Schenkenburg's testimony was that they discussed with the defendant his right to a jury trial and expressed that since the State had offered to waive the death penalty in exchange for a bench trial, that this might be in defendant's best interest, but, again, the decision was left up to defendant. Counsel testified that she even went to get his aunt so that he might discuss it with her prior to making a decision.

FINDING OF FACT No. 6: Movant testified during his post-conviction hearing that he was told it was not in his best interest to testify at trial and that he felt it was not his decision not to testify. Mr. Berrigan's testimony concurred with the first part of this claim, but added that it was not in the movant's best interest to testify at trial, because his testimony would not have been consistent with movant's defense, but that it was his decision whether or not movant testified. Mr. Berrigan further testified that he explained to the defendant his constitutional rights.

The post-conviction court found as to each disputed fact against the contention of the motion. The legal conclusions cite the principles and decisions that govern the adjudication of such contentions and the facts as found. They are not clearly erroneous. That is the limit of our scope of review. *Day v. State,* 770 S.W.2d 692, 695[1] (Mo. banc 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989); Rule 29.15(j).

The order denying relief under Rule 29.-15 is affirmed.

All concur.