**STATE of Missouri, Respondent,**

v.

**Leamon WHITE, Appellant.**

No. 71600.

Supreme Court of Missouri,
En Banc.

July 23, 1991.

Rehearing Denied Sept. 10, 1991.

Nancy A. McKerrow, Columbia, Bruce W. Simon, Kansas City, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Chief Justice.

Defendant White directly appeals his jury conviction of first degree murder, three counts of armed criminal action, and two counts of first degree assault. He also moved for postconviction relief under *Rule 29.15* and now appeals from the motion court's denial of relief on procedural grounds. These two appeals were consolidated for review pursuant to *Mo. Const. 1945, Art. V, Section 3* and *Rule 29.15(l)*.

Defendant does not challenge the sufficiency of the convicting evidence, but a brief rendition of the facts follows. Defendant went with his friend Roger Buckner to the home of the victims, Don Wright and Carol Kinney. Also present was the third victim, Ernest Black, a guest in the home.

The purpose of defendant's visit was to obtain some "crack" cocaine. Wright had previously promised to get the cocaine and sell it to White. When defendant and Buckner arrived they discussed the crack deal with Wright. During the discussion Cleveland Ford, another of White's friends, came into the house unannounced through the back door and claimed to be associated with defendant and Buckner. At that point, the three purported drug buyers drew guns. Defendant put his gun to Wright's head and asked him where he kept the money and drugs. Wright said there were no drugs or money in the house. Defendant and his companions then tied up Wright, Black, Kinney and Kinney's two children, apparently with extension cords. The assailants beat Wright and Black with their guns, all the while unsuccessfully interrogating them about where the money and drugs could be found.

According to the witnesses' testimony, White declared that the three adults should die. Ford held up Wright's head while defendant slit his throat. Buckner then cut Kinney's throat repeatedly, slicing her jugular vein. Defendant, Buckner, and Ford then turned on the gas stove, extinguished the pilot lights, and left the apartment. Wright died from strangulation and asphyxiation. Black and Kinney survived this vicious attack and later identified

White, Buckner and Ford as their attackers.

### Rule 29.15 Proceedings

After his conviction defendant filed a timely but unnotarized pro se postconviction motion on August 17, 1989. The motion court appointed counsel on September 25, 1989. Movant's attorney entered his appearance and moved for a thirty day extension on October 20, 1989. On November 9, 1989 the first attorney filed a motion to withdraw, and a second attorney entered his appearance as movant's counsel. This second attorney filed a "First Amended Motion" and a motion for a thirty day extension of time on November 27, 1989. The motion court then granted movant until January 9, 1990 to file a second amended motion. Movant's counsel filed the second amended motion on January 8, 1990. On August 1, 1990 the motion court entered its findings of fact and conclusions of law denying movant relief without an evidentiary hearing.

■ Movant argues that this case should be remanded to the motion court for findings on the issue of postconviction counsel's abandonment in light of this Court's recent decisions in *Sanders v. State,* 807 S.W.2d 493 (Mo. banc 1991), and *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991). We agree.

*Rule 29.15(f)* provides:

> Any amended motion shall be verified by movant and shall be filed within thirty days of the date counsel is appointed or the entry of appearance by counsel that is not appointed. The court may extend the time for filing the amended motion for one additional period not to exceed thirty days ...

This Court has held that the effective date of appointment of counsel is the date on which the office of public defender is designated rather than the date of counsel's entry of appearance. *See Schneider v. State,* 787 S.W.2d 718, 720 (Mo. banc), *cert. denied* — U.S. ——, 111 S.Ct. 231,

112 L.Ed.2d 186 (1990) (applying the stated rule prospectively). In this case the motion court appointed counsel, and the thirty day limitation began to run, on September 25, 1989. Movant's first counsel obtained the allowed thirty day extension on October 20, 1989 and then withdrew from the case on November 9, 1989. Movant's second postconviction counsel entered his appearance on November 9, 1989, but failed to file an amended motion until November 27, 1989. *Rule 29.15(e)* specifically states:

> For good cause shown, appointed counsel may be permitted to withdraw. If appointed counsel is permitted to withdraw, the court shall cause new counsel to be appointed.

Neither of movant's attorneys obtained the motion court's permission for the change of counsel.[1]

The first attorney's withdrawal without permission from the motion court could constitute abandonment which arguably prejudiced movant. This issue of abandonment should be the subject of a factual inquiry by the motion court, by conducting an evidentiary hearing, or by examining the existing record if no disputed facts appear.

Movant argues that his second counsel also effectively abandoned him by failing to file a timely and complete amended motion. He argues that the amended motions were not properly verified and do not allege sufficient facts and grounds as required by *Rule 29.15(e)*. This failure to verify and properly amend the claims raises questions as to whether the defendant was essentially abandoned by his postconviction counsel. These issues should also be adjudicated in a factual hearing conducted by the motion court under the teaching of *Sanders,* 807 S.W.2d at 495.

Counsels' withdrawal, failure to file a timely amended motion, and failure to verify and allege sufficient facts raise serious questions as to whether the movant received postconviction representation in the sense of *Rule 29.15*. Answers to these questions are for the motion court as part

---

**1.** We express no opinion as to what impact, if any, a withdrawal permitted by the motion court would have on the time limitations contained in *Rule 29.15*.

of movant's *Rule 29.15* proceedings. *Sanders v. State*, 807 S.W.2d at 495.

### Direct Appeal

In the interest of expedition, we also address defendant's direct appeal claims and find them to be without merit.

■ Defendant presents five primary claims of error in his direct appeal. First, defendant alleges the trial court erred in refusing to order a new trial after the court informed the jury during voir dire that the two possible sentences for first degree murder included the death penalty or life imprisonment without probation or parole, unless the governor exercised his executive clemency powers. Defendant claims this statement "served to dilute and restrict the [jurors'] sense of responsibility," and is therefore constitutionally prohibited under *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

First, it must be noted that defendant's counsel did not object to these comments at the time they were made, and our review is necessarily limited to plain error. *Rule 30.20; State v. McMillin*, 783 S.W.2d 82, 95 (Mo. banc), *cert. denied* — U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). We find no plain error resulting from the trial court's correct statements of the law. The Supreme Court addressed this question in *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), and held that an instruction allowing the jury to consider the governor's powers did not impermissibly restrict the jurors' role in sentencing. Accordingly, this Court held in *State v. Feltrop*, 803 S.W.2d 1 (Mo. banc 1991), that no error results where the statements were correct statements of existing law. *Id.* at 9 (citing *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989)). The trial court's statements about punishment accurately reflect Missouri law on the possible punishments for first degree murder. *See § 565.020.1.* Defendant's first point is denied.

■ Defendant's second point alleges that the trial court erred by impermissibly restricting the defense counsel's cross-examination of the state's chief witness, Carol Kinney. Defense counsel confronted Ms. Kinney with prior inconsistent statements made to the police and other witnesses in an effort to impeach her direct examination testimony. Defendant accurately points out that this Court set a liberal standard for impeachment of witnesses in *State v. Bowman*, 741 S.W.2d 10 (Mo. banc 1987), *cert. denied* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 60 (1988). But the use of prior inconsistent statements is not absolute. In *State v. Taylor*, 726 S.W.2d 335 (Mo. banc 1987), we held "impeachment may be made only where the witness has been asked the specific question upon which [she] is sought to be discredited." *Id.* at 337 (citations omitted). The scope of cross examination is soundly within the trial court's discretion. This contention is well-supported by Missouri cases both from this Court and the courts of appeals.[2] The trial court's decision was not an abuse of discretion. The second point is also denied.

■ Third, defendant claims the trial court erred in sustaining the prosecutor's challenge of venire members Robertson and Bryson for cause on account of their opinions about imposing the death penalty. Again, this matter rests within the discretion of the trial court, and we find no reason to disturb that court's ruling. This Court in *State v. McMillin*, 783 S.W.2d at 91, reiterated the proper standard for striking venire members based on their views regarding the death penalty. The record must show for each venire member struck that the "views would 'prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath.'" *Id.* at 91, *quoting Wainwright v. Witt*, 469 U.S. 412, 420, 105 S.Ct. 844, 850, 83 L.Ed.2d 841 (1985).

**2.** *See, e.g., State v. Taylor*, 726 S.W.2d 335 (Mo. banc 1987); *State v. Gilmore*, 681 S.W.2d 934 (Mo. banc 1984); *State v. Laux*, 755 S.W.2d 315 (Mo.App.1988); and *State v. Dunn*, 731 S.W.2d 297 (Mo.App.1987).

Venireperson Robertson clearly stated that as a member of the jury he would be incapable of considering death as one of the possible penalties. Defense counsel made no attempt to rehabilitate this venire member, although he did object "just for the record." Similarly, Venireperson Bryson stated that she was opposed to the death penalty. Upon defense counsel's questioning she stated that she could at least consider the death sentence, but would not vote in favor of imposing it. This Court defers to the trial judge's superior position to determine the impact of the venire member's statements and demeanor. The record supports the trial judge's conclusion that these jurors could not give appropriate consideration to the death penalty.

■ Defendant next argues the trial court erred by refusing defense counsel's motion for a mistrial based on statements made in the prosecutor's closing argument. The prosecutor stated:

Because if one of you doesn't do your job, if just one of you doesn't do your job, ladies and gentlemen, this man wins, and this man gets away with what he intended— ...

Defendant's attorney immediately objected to this statement and requested the court to give the jury instructions to disregard the statement and follow the written instructions as given by the court. The trial court sustained the objection and gave the cautionary instruction defendant requested. Defense counsel then moved for a mistrial "to protect the record," but stated he did not want a mistrial "as a practical matter." The trial court denied the mistrial motion.

Under these circumstances, the trial court cannot be said to have erred in refusing to grant the drastic remedy of a mistrial. *See State v. Laws,* 668 S.W.2d 234, 238 (Mo.App.1984). The defendant cannot complain about the denial of a mistrial when his counsel plainly told the court that he did not want this relief.

■ Finally, defendant invokes this Court's mandatory proportionality review under *§ 565.035, RSMo* 1986, and argues that the death sentence in this case is excessive and disproportionate when compared to similar cases. We reject this contention and further find no indication that the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor.

Disregarding those cases in which the state waived the death penalty as a possible sentence,[3] this defendant's death sentence is apparently commensurate with other similar cases in which the ultimate penalty has been imposed. We find cases similar to this one in which the jury recommended the death penalty. In *State v. Grubbs,* 724 S.W.2d 494 (Mo. banc 1987), a defendant was sentenced to death for tying up a victim, cutting his throat, and attempting to burn down the victim's trailer where the crimes occurred. Similarly, in *State v. McMillin,* 783 S.W.2d 82 (Mo. banc 1990), this Court upheld a death sentence for a defendant who gagged, beat and set on fire a victim from whom the defendant had expected to obtain illegal drugs. Other cases with somewhat similar facts may not have resulted in the imposition of the death penalty, but this circumstance does not require the mitigation of this death sentence. The proper inquiry in determining proportionality is "not whether any similar case can be found in which the jury imposed a life sentence, but rather whether the death sentence is excessive or disproportionate in light of 'similar cases' as a whole. *See* § 565.035.3(3)." *State v. Mallett,* 732 S.W.2d 527, 542 (Mo. banc 1987). On the basis of prior cases, we find this defendant's sentence comports with similar cases in which other defendants received the death penalty. Defendant claims that his death sentence is disproportionate because his accomplice received a life sentence for his role in the crimes (*see State v. Buckner,* 810 S.W.2d 354 (Mo.App.1991)), but the state waived the death penalty in that case. The multiple and vicious assaults, in the course of an attempt to obtain money

**3.** The Court has held that such cases are not appropriately considered for proportionality re-

view purposes. *See State v. Byrd,* 676 S.W.2d 494 (Mo. banc 1984).

and drugs, demonstrate conduct of the most aggravating sort.

### Conclusion

Defendant's conviction and death sentence are affirmed pursuant to *§ 565.035.5, RSMo* 1986. His appeal based on the denial of *Rule 29.15* relief is reversed and remanded to the motion court for further proceedings consistent with *Sanders v. State,* 807 S.W.2d 493 (Mo. banc 1991) and this opinion.

ROBERTSON, C.J., COVINGTON, J., DON W. KENNEDY, Special Judge, and HIGGINS, Senior Judge, concur.

HOLSTEIN, J., concurs in separate opinion filed.

RENDLEN, J., concurs and concurs in separate opinion of HOLSTEIN, J.

HOLSTEIN, Judge, concurring.

I concur fully in the Court's decision affirming the conviction. However, my concurrence with that portion of the opinion reversing the Rule 29.15 conviction is done with some reservations. I believe there is a serious question whether the appellant has properly preserved, in his point relied on, any claim that there was a violation of Rule 29.15(e). It is not a constitutional violation, but a violation of that rule which justifies a reversal under the opinions in *Luleff v. State* and *State v. Sanders,* cited and relied on in the majority opinion.

The point relied on, upon which the Rule 29.15 judgment is reversed, states as follows:

> The motion court clearly erred in denying appellant's motion for postconviction relief because the record shows that appellant was denied a full and fair hearing on all of his claims due to ineffective assistance of appointed 29.15 motion counsel, in violation of the fifth, sixth, eighth, and fourteenth amendments to the United States Constitution and article I, sections 10, 18(a), and 21 of the Missouri Constitution, in that appointed counsel failed to file a timely amended motion and failed to ascertain if all justiciable allegations of error were included in the amended motion that was filed.

It is noteworthy that no claim is made in the point relied on that counsel or the trial court failed to comply with Rule 29.15(e). In the authorities under the point, no mention is made of Rule 29.15(e). The rules are reasonably clear as to what is required in a point relied on portion of a brief:

> The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder.

*Rule 84.04(d).* In this particular case, the only violation asserted is a violation of a constitutional right. No claim is made that the rules of this Court were violated.

The United States Supreme Court recently reiterated that there is no constitutional right to counsel in a post-conviction proceeding, and the burden of an error made by an attorney in a collateral proceeding, including failing to meet time constraints under a state procedural rule, falls on the shoulders of the defendant. *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

I can think of nothing that is clearer than the language of our rule requiring the preservation of claims:

> Apart from questions of jurisdiction of the trial court over the subject matter and questions as to the sufficiency of pleadings to state a claim upon which relief can be granted or a legal defense to a claim, allegations of error not briefed or not properly briefed *shall not be considered* in any civil appeal....

*Rule 84.13(a)* (emphasis added). The language of that rule must be given at least as much meaning and force as the language of Rule 29.15(e).

In this case, appellant's brief was filed before the decision in *Luleff* and *Sanders.* Only in the reply brief was Rule 29.15 relied on and *Luleff* and *Sanders* were cited. Because of the peculiar circumstances of this case, I am willing to forgive the shortcomings in appellant's brief. In

the future, I will not join in an opinion in which the *Sanders* claim is not properly preserved in a brief that complies with this Court's rules. To require less than compliance with our rules on briefing undermines the integrity of all the rules and leads to confusion among bench, bar and the general public. The rationale behind the rule on briefing is stated in *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978), and need not be amplified here. It is sufficient to say that requiring a party to identify the issues to be decided is not unreasonable, but is essential to our process.

The current vogue in capital cases is to transmute virtually every claim of error into a violation of some provision of the state or federal constitution. The fact is that many, if not most, rights are granted under the grace of a rule, statute or judicial precedent. The right to counsel and counsel's duties in a Rule 29.15 proceeding are guaranteed by the rule, not the Constitution. Failure to properly brief the point is, or at least should be, a waiver of the claim.